## McCloskey versus Miller et al.

1. Miller by writing, sold all the coal under a tract of land, with privilege to the vendee to use the railroad, tenements and other improvements of Miller, the vendee to remove the coal in 40 years, at the expiration of which time or on the removal of the coal, " the rights and privileges hereby granted shall cease." Held, that the vendee had no right to use the improvements, &c., for removing, &c., other coal than that mentioned in the writing.

2. The vendee used the improvements in removing, &c., coal on an adjoining tract: *Held*, that this was an illegal use, but assumpsit was not the proper form of action.

3. Assumpsit is founded on contract; and will not lie for use and occupation when there is no relation of landlord or tenant.

4. Case is the proper action; the action being assumpsit, the judgment for plaintiff was reversed, a *venire de novo* awarded, the form of action being amendable under the Act of May 10th 1871.

5. Shroder *v.* Brenneman, 11 Harris 348, in point.

October 21st 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* Of October and November Term 1871, No. 115.

This was an action of assumpsit brought December 24th 1869, by George T. Miller and others against John McCloskey.

The plaintiffs claimed under William L. Miller and the defendant under John Herron, William Herron and William Brown.

On the 7th of April 1846, by articles of agreement of that date, Miller sold to the Herrons and Brown "all the good merchantable coal lying and being in and under the plantation or tract of land occupied by the said Miller, and by him originally purchased from John Fritchman, excepting, &c. * * * with privilege to the said parties of the second part and their assigns of entering upon the land of the said Miller for the purpose of excavating and removing the said coal; of using exclusively the railroad fixtures, ropes and wagons now employed by the said Miller in and about his mine; of occupying and using the six cabins or tenements now erected on the premises belonging to the said Miller, also one undivided half of other ten cabins or tenements belonging in common to the said Miller and a certain William Noble, for the accommodation of their hands; of constructing such other houses as may be required from time to time for the same purpose, or for their own individual use in the prosecution of their business; of erecting and setting up at such points as they may deem most convenient for them, a saw-mill and store-house; of enclosing and appropriating so much ground in and about the said several buildings as may be required for the full and profitable enjoyment thereof; of making openings and ditches wherever they may judge proper upon the premises of the said Miller, for the ventilation and draining of their pits and mines; of constructing coke ovens at suitable places within their discretion; of using the landing and shore along the river upon the premises of the said Miller for purposes of harbor and anchorage and of landing and unloading their boats, and finally of using and exercising all other privileges and immunities which may be essential to the full and complete enjoyment of any of the rights herein granted and conveyed: *Provided*, however, that the said parties of the second

[McCloskey *v.* Miller.]

part, their executors, administrators or assigns, shall remove the said coal within the period of forty years from and after the date of these presents, and that at the expiration of the said term, or upon the removal of the said coal, which ever shall first happen, all the rights and privileges hereby granted shall cease and determine; the said parties of the second part being at liberty to remove all the erections which they may have made upon the said premises, leaving however the railroad fixtures and apparatus, also the same number of wagons as are now transferred to them for the use of the said Miller, his heirs and assigns, they being the owners of the land by which the said coal is covered. ·

In consideration of all which the said parties of the second part do hereby jointly and severally covenant and agree to pay unto the said Miller, his executors, administrators and assigns, the sum of two hundred and fifty dollars per acre for every acre of coal so conveyed as aforesaid (in a number of instalments). * * * And the said party of the first part agrees, that upon the payment by the said parties of the second part of the first two instalments aforesaid, amounting in all to the sum of five thousand one hundred and sixty-five dollars and ninety-three cents, he will execute if required to the said parties of the second part a deed of conveyance of the whole of the lands purchased by him from the said John Fritchman, *subject* however to a lien for the balance of the purchase-money still remaining unpaid, in trust to secure them against any liens or encumbrances upon the said lands other than the said purchase-money to which their payments are to be applied aforesaid, and upon the further trust that they will reconvey to the said Miller, whenever the same and all other encumbrances existing at the time of the said conveyance shall have been by them fully discharged."

This action was brought to recover for the use and occupation of the premises and privileges mentioned in the articles, for the purpose of mining and removing coal other than that mentioned in them.

The case was tried May 1st 1871, before Sterrett, P. J.

The plaintiffs gave evidence that the defendant took out coal other than that underlying the Fritchman tract, and used the road, improvements, &c., granted by the agreement, for the purpose of doing so, and that there was coal still remaining in that tract.

The defendant's third point and its answer were :—

" Under the article of 7th April 1846, the defendant as assignee had a right to use and enjoy the privileges therein set forth for the purposes of mining and removing any coal owned by him, or for his own individual use, in the prosecution of his business as a coal merchant, for and during the period of forty years, or until all the coal in the tract described therein was removed."

[McCloskey *v.* Miller.]

Answer: " This point is refused as regards other coal than that described in the agreement in evidence."

The court also charged that if the evidence justified it, the plaintiffs might recover in this form of action.

The verdict was for the plaintiffs for $1384.44.

The defendant removed the record to the Supreme Court, and there assigned for error the answer to his point and the instruction of the court.

*W. D. Moore* and *C. B. M. Smith* (with whom was *S. M. Raymond*), for plaintiff in error.—This action is for damages outside of the agreement and therefore assumpsit would not lie: January *v.* Goodman, 1 Dallas 208; Shaeffer *v.* Geisenberg, 11 Wright 500; Gilson *v.* Stewart, 7 Watts 100.

*D. T. Watson* (with whom was *Veech*), for defendant, in error.

The opinion of the court was delivered, May 17th 1873, by

WILLIAMS, J.—The construction which the court gave to the agreement of the 7th of April 1846, by its qualified refusal to charge as requested in the defendant's third point, was in accordance with the evident intention of the parties. It is clear that the use of the railroad, and of the other property specified in the agreement, was granted to the vendees of the coal, under whom the defendant claimed the right to their use, for the sole purpose of enabling them to dig and remove the coal purchased from the grantor. The defendant, therefore, had no right to use the property for the purpose of taking out other coal of which he was the owner. But if he had no such right, are the plaintiffs entitled to maintain an action of assumpsit for the use of the property for a purpose for which it was not granted? Undoubtedly such use was illegal, and the plaintiffs are entitled to some remedy or redress for the wrong of which they complain. But is assumpsit for the use and occupation of the property for other purposes than taking out the coal sold by the agreement the appropriate remedy? The action of assumpsit is founded on a contract, express or implied, and will not lie where the relation of landlord and tenant does not exist: 1 Chit. Pl. 107; Pott *v.* Lesher, 1 Yeates 576; Smith *v.* Stewart, 6 Johns. 46; Bancroft *v.* Wardwell, 13 Id. 489; Dudding *v.* Hill, 15 Ill. 61; McNair *v.* Schwartz, 16 Id. 24; Rogers *v.* Libbey, 35 Maine 200. Here the relation of landlord and tenant never existed between the parties. There was no promise to pay for the use of the property, and none can be inferred from the facts and circumstances established by the evidence. But if assumpsit will not lie, it does not follow that no action is maintainable for the wrongful use of the property. The plaintiffs' interest in it is only in reversion, and for its misuse, as is well settled, case will lie and is the proper remedy:

[McCloskey v. Miller.]

1 Chit. Pl. 132. It was ruled in Shroder v. Brenneman, 11 Harris 348, that a right of way along an alley appurtenant to a par-. ticular lot cannot lawfully be used as a mode of access to another lot to which it is not appurtenant; and case was held to be the appropriate remedy for such illegal use. This decision is directly in point. It shows that the plaintiffs are entitled to redress for the wrongful use of the property in question, and that case is the proper remedy. The court below was, therefore, in error in instructing the jury that the plaintiffs might, if the evidence justified, recover in the present form of action. Nor was the error immaterial. It affected the measure of damages. If assumpsit would lie, then the measure of damages would be the value of the use of the property. But if case is the proper remedy, compensation for the injury occasioned by its wrongful use is the measure of the damages to which the plaintiffs are entitled; and it does not follow that one is the equivalent of the other. But a mistake in the form of action is no longer fatal. It is amendable under the Act of 10th May 1871, Pamph. L. 243, and therefore, in reversing the judgment we shall send the cause back for a new trial.

Judgment reversed, and a *venire facias de novo* awarded.