Philadelphia, Appellant, *v.* Pennsylvania Sugar Company.

Argued January 11, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused April 10, 1944.

*Samuel Feldman,* Assistant City Solicitor, with him *Robert McCay Green,* City Solicitor, for appellant.

*Otto Kraus, Jr.,* with him *Howard M. Long,* for appellee.

OPINION BY MR. JUSTICE HUGHES, March 20, 1944:

The Pennsylvania Sugar Company maintains a wharf extending into the Delaware River from a point adjacent to and on the South side of Shackamaxon Street in the City of Philadelphia. On the North side of Shackamaxon Street is the wharf of the Pennsylvania Railroad Company, which wharf constitutes the North wall of the slip or dock at the Delaware River end of Shackamaxon Street. This slip or dock is in no manner artifically constructed, but the waters therein rise and fall with the tide in the river basin. The Pennsylvania Sugar Company caused barges and boats of various kinds operated by and for it to enter the dock contiguous to the land at the foot of Shackamaxon Street along side the wharf of the Pennsylvania Sugar Company and on the North side of that wharf, and to use and occupy the dock and there to proceed to load and unload various merchandise and commodities on and from the wharf. The City of Philadelphia billed the Pennsylvania Sugar Company at the rate of $100.00 a month for the use of this dock, and upon refusal to pay, the City filed this action in assumpsit.

The question raised on this appeal is whether or not the City of Philadelphia has title to the waters of the Delaware River at the end of Shackamaxon Street, in the City of Philadelphia, to such an extent as to enable it to maintain this action.

The plaintiff's amended statement of claim sets forth that the Act of March 28, 1803, P. L. 476, incorporated the Northern Liberties in the then County of Philadelphia and fixed the boundaries; that by the Act of March 6, 1820, P. L. 54, the Northern Liberties was divided and Kensington district was incorporated out of the northerly section. Shackamaxon Street was located in the Kensington district and terminated at the river Delaware. Under the provisions of the Act of March 6, 1820, P. L. 54, Section 30,[1] all public landing places within the district were vested in the board of commissioners

---

[1] Act of March 6, 1820, P. L. 54, Section 30.

All public landing places at the junction of any of the streets in the said district, with the river Delaware or otherwise, which now are

for the use and benefit of the inhabitants of the district. The Act of April 5, 1849, P. L. 424, Section 16,[2] provided that Kensington district should be vested with the same powers, authorities and jurisdictions over the ends of every public street in the district extending into the river Delaware, as fully as were possessed by the then City of Philadelphia. The charter of William Penn for the City of Philadelphia, dated October 25, 1701, 53 P. S. 7431, provided that the end of each street extending into the river shall be and continue free for the use and service of the city and the inhabitants thereof, with power to improve the same "and build wharves so far out into the river there as the mayor, alderman and common council shall see meet." Shackamaxon Street was ultimately laid out and opened to a width of sixty feet from Queen Street (now Richmond Street) to the Delaware River. By the Act of February 2, 1854, P. L. 21,[3] the incorporated Kensington district was merged into the City of Philadelphia, the latter being vested with all the powers and rights of the district in and to all landings, landing places, and other property and estate "belonging to any

---

or hereafter may be laid out, shall be . . . vested in, and the title thereto confirmed to the . . . board of commissioners and their successors, for the use and benefit of the inhabitants of the said district.

[2] Act of April 5, 1849, P. L. 424, Section 16.

That the commissioners and inhabitants of the Kensington district of the Northern Liberties aforesaid, be and they are hereby invested with the same powers and authorities, jurisdictions, rights and immunities into and over the ends of each and every public street or alley in the said district, which now extends, or shall hereafter be extended to or into the river Delaware, or the Cohocksink [creek] street, east of Forest street, as fully to all intents and purposes as "The mayor, alderman and citizens of Philadelphia," now have, possess or enjoy over or respecting the ends of the several streets in the city of Philadelphia, which extend to or into the river Delaware or Schuylkill.

[3] All the right, title and interest of the several townships, districts, and other municipal corporations mentioned in this act, of, in, and to all the lands, . . . wharves, . . . landings, landing places, . . . and to all other property and estate whatsoever, and wheresoever belonging to any or either of them, be and they are hereby vested in the City of Philadelphia . . .

or either of them." For many years, from the western bank of the Delaware River and at the eastern extremity of Shackamaxon Street, to the full width thereof, a private corporation maintained and operated a ferry service to the State of New Jersey bordering on the eastern side of the Delaware River. At the end of Shackamaxon Street the ferry company was permitted to and did build a bulkhead and ferry house, and so long as the ferry company leased these privileges from the City of Philadelphia it paid a specified rental to the city. After the ferry service was discontinued the ferry house was removed, but the bulkhead still remains. It was after the ferry service was discontinued that the Pennsylvania Sugar Company used and occupied this dock.

It nowhere appears in the statement of claim that any vessels were docked against the public landing or that the use of the public landing was in any manner interfered with by the use the defendant made of the dock.

In order to clarify the rights to build and own wharves in the Delaware River, the Act of April 8, 1868, P. L. 755, Section 2, provided: "That the water or dock left for the use of any wharf shall remain vested in the commonwealth, subject to existing laws; but the owner of such wharf shall be entitled to charge and receive compensation for the use of the same, and to enjoy all the rights and privileges in connection therewith to which he is now by law entitled." Thereafter, *Easby v. Patterson et al.*, 6 W. N. C. 318, (1878) an action in assumpsit to recover dockage, held: "We have no doubt at all that the owners of the wharves in this city have a free and uninterrupted right over their wharves, in order to derive that revenue from them that they are entitled to. That right is, however, subject to the rights of other people and the rights of the public. When there is a dock lying between wharves owned by different people, opposite to each other, with a common dock room between them, I have no doubt that a ship may go to either wharf it may get access to. The dockway is as much the common right of passage as the channel itself.

The tide ebbs and flows there, and everybody in the Commonwealth has a right there. If a vessel, therefore, comes into such a dock, it has a right to go to either wharf and occupy it, and if, while that vessel is lying there, it lies in such a position as to prevent a vessel getting to the other dock, then I think an action would lie. I do not think, however, that a right of action exists if the position of the vessel impedes or hinders nobody. I think that if a vessel should be at the upper end of the dock, and prevent the entrance to the dock room of other vessels, the owner of the wharf would have a right of action to recover damages for the unreasonable occupation of the dock, or, in other words, for the obstruction of the general right of way there, and of the particular right of the owner to recover revenues from his wharf. I do not think that there can be any such thing by way of contract, by merely entering the basin formed by the wharves, unless the vessel is in some one's way at the dock. There can be no right of action for anything separated from the property. If there be no right of property, the assumpsit in this case will not lie. If the property was not in plaintiff, but in the Commonwealth, as such dock room in a navigable river undoubtedly is, no action could be maintained." And in *Easby v. Patterson*, 7 W. N. C. 219 (1879) the court further held that, the evidence showing no permissive occupation of the plaintiff's wharf or dock as would raise an implied assumpsit, and there being no evidence that the plaintiff was at any time prevented the full enjoyment of his property, an action of assumpsit would not lie. In an action for use and occupation, a contract, express or implied, must be proved: *Brolasky v. Ferguson*, 48 Pa. 434; *McCloskey v. Miller et al.*, 72 Pa. 151.

The title to the bed of Shackamaxon Street is in the adjacent property owners whose lands abut the Delaware River, subject to the right of the public to use it. The riparian rights of these owners extend to the ordinary low-water mark along the Delaware River: *Black et al. v. American International Corporation*, 264 Pa. 260, 107 A. 737. The City of Philadelphia, as successor

to the Commissioners of the District of Northern Liberties, possesses title in the public landing at the end of this street in trust for the use and benefit of its citizens, and it cannot restrict the free, perpetual, and unrestrained use of it to the public. The waters at the landing are still part of the navigable stream for the general use of the public. Subject to this jurisdiction of the city, the riparian rights are otherwise clearly stated in *United States v. Pennsylvania Salt Manufacturing Company,* 16 Fed. 2d 476, 481, "(a) that a riparian landowner has no property rights qua landowner beyond low-water mark; (b) that the title to the land below low-water mark is in the commonwealth; (c) that the title to the land of the riparian owner between high-water mark and low-water mark is subject to the control of the police power of the state; (d) that the control below low-water mark is in the state, both because of its police power control over navigable water highways and also its ownership of the land under the water; and (e) that whatever easement rights (private or public) exist or may be acquired in and over navigable waters and the lands under them are subject to the control of the police power of the state (we are ignoring the control of the United States), so far as the navigable water is over lands in private ownership, and to the added control of the state as a landowner below low-water mark, and hence that all such public rights and easements may be to a degree or in toto taken away by the state or its lawful licensee."

The City of Philadelphia, under the various grants to it by the Commonwealth, received no rights to the waters of this dock or in the bottom land outside of and beyond the bulkhead line at ordinary low-water mark, distinct from the rights held in common with others, plus the right of access to and from the public landing at the end of Shackamaxon Street. There has been pointed out to us no act of assembly giving to the City of Philadelphia any title to these dock waters. The city has had no property right interfered with or affected by the action of the defendant in the use of this dock and is entitled to no recovery.

Judgment affirmed.