MOUNTAIN PROPERTIES,
INC., Appellee,

v.

TYLER HILL REALTY CORP. and
Jay Jacob t/a Tyler Hill Camp,
Appellants.

Superior Court of Pennsylvania.

Argued Dec. 5, 2000.

Filed Feb. 16, 2001.

Alan B. Cooper, Hawley, for appellant.

Gerald J. Butler, Scranton, for appellee.

Before JOHNSON, TODD and BECK, JJ.

BECK, J.:

¶ 1 In this appeal we examine whether appellant, Tyler Hill Realty Company ("Tyler Hill Realty"), has obtained a right to use a portion of a lake owned by appellee, Mountain Properties, Inc. by prescriptive easement, by virtue of the fact that it owns a small portion of the lake or because the lake may be navigable for recreational

purposes. We hold that the trial court did not err in finding no such right to use the lake existed. Therefore, we affirm the trial court's order granting injunctive relief to Mountain Properties, and finding that Tyler Hill Realty is liable to Mountain Properties for $25,000.00.

¶ 2 The injunctive relief obtained by Mountain Properties arises from Tyler Hill's use of Laurel Lake for its summer camp. In 1968 Mountain Properties purchased a parcel of property, which included at least 90% of Laurel Lake. The remainder of Laurel Lake is owned by Tyler Hill Realty which obtained its portion in 1991 by way of a deed from its predecessor in interest, Tyler Hill Camp, Inc. Prior to Tyler Hill Realty's purchase, Tyler Hill Camp had entered into a license agreement dated June 1, 1989 with Mountain Properties. Pursuant to that agreement Tyler Hill Camp was permitted to use Laurel Lake during the summer months from 1989 through 1993 for a fee of $10,000.00 per year. On the same date, June 1, 1989, Tyler Hill Camp and Mountain Properties executed a document entitled "Agreement." The "Agreement" contains a grant clause conveying any rights, prescriptive or otherwise, held by Tyler Hill Camp in the portion of the lake held by Mountain Properties.

¶ 3 In 1993 Tyler Hill Realty paid the rental fee of $10,000.00 to Mountain Properties to use the lake. From 1994 through 1996, Tyler Hill Realty forwarded Mountain Properties $10,000.00 each year and continued to use Laurel Lake. In April 1997, Mountain Properties informed Tyler Hill Realty via letter that the fee for use of the lake during 1997 was being raised to $25,000.00. The President of Mountain Properties later told Tyler Hill Realty representative Jay Jacobs that he was expecting the check for $25,000.00 for the 1997 season. Jacobs responded by stating, "I hear you." Tyler Hill Realty subsequently used the lake during the 1997 season. However, the $25,000.00 rental fee was never paid.

¶ 4 In June 1998 Mountain Properties filed a complaint in equity for a preliminary injunction to enjoin Tyler Hill Realty from using the lake, and later a civil complaint requesting the $25,000.00 rental payment. Following a non-jury trial, the trial court enjoined Tyler Hill Realty from further use of the portion of Laurel Lake owned by Mountain Properties. The trial court further decided that Tyler Hill Realty was liable to Mountain Properties for $25,000.00, which represents rent owed for the use of the lake during the summer of 1997. This appeal followed.

¶ 5 Tyler Hill Realty presents the following issues for our review:

I. Is an agreement collateral to a license agreement a "deed" for purposes of interpretation?

II. Is a successor in interest bound by a personal license agreement that specifically omits any reference to running with the land, or any reference that it is binding upon heirs and assigns?

III. Has [Tyler Hill Realty] acquired a right to utilize the lake in question for recreational purposes through prescriptive easement?

IV. Does the watershed area in question fit the definition of a navigable body of water for purposes of extending the riparian rights doctrine to "commercial recreation?"

V. Does public policy require Pennsylvania to move away from the antiquated "Common Law Rule" regarding water usage to a more modernistic and practical approach?

VI. Did the parties enter into an agreement in 1997 for use of the lake in question in exchange for payment in the amount of $25,000.00?

Tyler Hill Realty's Brief, at 3.

¶ 6 Tyler Hill Realty's first three issues are inter-related. It maintains the trial court erred in characterizing the June 1, 1989 "Agreement" between Tyler Hill Camp and Mountain Properties as a deed.

Tyler Hill Realty argues the document is merely an agreement. It asserts that as an agreement the absence of the words "heirs and assigns" or language that the property runs with the land, limits the document to the signatories only. Therefore, it maintains whatever rights and obligations Tyler Hill Camp and Mountain Properties undertook in 1989 does not bind successors in interest such as Tyler Hill Realty. As a result, it argues it has acquired a limited right to use Laurel Lake by prescriptive easement taking into account the period from 1968 through 1989 during which Tyler Hill Camp used the lake.

■ ¶ 7 Initially, we find no error with the trial court's characterization of the June 1, 1989 "Agreement" as a deed. The word "deed" denotes an instrument in writing, signed, sealed, and delivered by the grantor whereby an interest in realty is transferred from the grantor to the grantee. 23 Am.Jur.2d, Deeds § 1. The fact the instrument is not specifically termed a deed is not significant. *Hess v. Jones,* 335 Pa. 569, 7 A.2d 299 (1939). Rather, in interpreting any written instrument, the primary object is to ascertain and effectuate the intention of the parties. *Id.*

¶ 8 In the "Agreement" the parties, Tyler Hill Camp and Mountain Properties, refer to themselves as grantor and grantee, respectively. The "Agreement" contains a grant clause conveying all the rights held by Tyler Hill Camp in the portion of the lake held by Mountain Properties. The specific language provided that "... Tyler Hill [Camp] irrevocably and unconditionally conveys and assigns all such putative rights to Mountain Properties for the consideration of one dollar...." The rights conveyed and assigned included "any right, claim or interest of any kind with respect to the portion of the Lake owned by Mountain Properties (whether in the nature of an easement right, prescriptive right, right of use, right of enjoyment, squatters rights or any oth-

er right or interest of any kind)...." Furthermore, the parties themselves categorized the "Agreement" as a "confirmation deed," and had it recorded with the Recorder of Deeds of Wayne County. *See* Realty Transfer Tax Statement of Value. Based on the foregoing, we conclude the trial court did not err in finding that the "Agreement" is a deed. As a deed, the absence of the words "heirs and assigns" or language that the property runs with the land, does not limit the document to the signatories only. Our legislature dispensed with the formal requirement of such language in deeds. *See* 21 P.S. § 1 and 2; *Hess, supra; Calhoun v. Hays,* 155 Pa.Super. 519, 39 A.2d 307 (1944).

¶ 9 As a result, Tyler Hill Realty has not acquired a right to use Laurel Lake by prescriptive easement when taking into account the period from 1968 through 1989 that Tyler Hill Camp used the lake because Tyler Hill Camp conveyed any prescriptive rights it may have held by executing the 1989 "Agreement." Moreover, after our review of the record we agree with the trial court that there existed a lack of evidence that the use of Laurel Lake prior to 1989 was adverse. Accordingly, Tyler Hill Realty's claim that it is entitled to a limited prescriptive easement fails.

■ ¶ 10 In its fourth issue, Tyler Hill Realty asserts that the trial court erred when it refused to extend the legal definition of navigability. It asserts the trial court should have extended the common law riparian rights doctrine to waters that are navigable for recreational purposes.

■ ¶ 11 In Pennsylvania, if a body of water is navigable, it is publicly owned and may only be regulated by the Commonwealth; ownership of the land beneath would not afford any right superior to that of the public to use the waterway. *City of Philadelphia v. Pennsylvania Sugar Co.,* 348 Pa. 599, 36 A.2d 653 (1944); *Pennsylvania Power v. Maritime Management,* 693 A.2d 592, 594 (Pa.Super.1997). If a

body of water is non-navigable, it is privately owned by those who own the land beneath the water's surface and the lands abutting it, and may be regulated by them. *Lakeside Park Co. v. Forsmark*, 396 Pa. 389, 153 A.2d 486 (1959); *Conneaut Lake Ice Co. v. Quigley*, 225 Pa. 605, 74 A. 648 (1909). Therefore, if Laurel Lake were a navigable body of water, Tyler Hill Realty could use it free of regulation from Mountain Properties. The rule for determining whether bodies of water are navigable is whether they are "used, or susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *Lakeside Park*, 396 Pa. at 391–92, 153 A.2d at 487 (quoting *Cleveland & Pittsburgh Railroad Co. v. Pittsburgh Coal Co.*, 317 Pa. 395, 397, 176 A. 7, 9 (1935)). The Court in *Lakeside Park* further stated:

> We think that the concept of navigability should not be limited alone by lake or river, or by commercial use; or by the size of the water or its capacity to float a boat. Rather it should depend upon whether the water is used or usable as a broad highroad for commerce and the transport in quantity of goods and people, which is the rule naturally applicable to rivers and to large lakes, or whether with all of the mentioned factors counted the water remains a local focus of attraction, which is the rule sensibly applicable to shallow streams and small lakes and ponds. The basic difference is that between a trade-route and a point of interest. The first is a public use and the second private.

*Id.* at 396, 153 at 489. Conversely, non-navigable is defined as not usable for commercial shipping purposes. *See id.*

¶ 12 Considering the fact Laurel Lake has not been used and is not susceptible of being used as a highway for commerce, under Pennsylvania's definition of navigability Laurel Lake is clearly a non-navigable body of water. Tyler Hill Realty apparently recognizes that under current Pennsylvania law Laurel Lake is non-navigable. Therefore, Tyler Hill Realty asks this Court to expand the definition of navigability to include waters that are used for recreational purposes, as the New York State Court of Appeals did in *Adirondack League v. Sierra Club*, 92 N.Y.2d 591, 600, 684 N.Y.S.2d 168, 706 N.E.2d 1192 (1998). In *Adirondack*, the New York court found that recreational use by boaters, and those on canoes and rafts can be considered in determining whether a river is navigable in fact. Under an expanded definition of navigability, Tyler Hill Realty submits Laurel Lake is navigable because at high water it is possible to travel from Laurel Lake to nearby Silver Lake on a canoe or raft via a stream.

¶ 13 We reject Tyler Hill Realty's invitation to expand the definition of navigability. As an intermediate appellate court, we do not enunciate new precepts of law or expand existing legal doctrines, since that province is reserved to our Supreme Court. *Hutchison v. Luddy*, 763 A.2d 826, 2000 PA Super 316; *Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792, 801 (Pa.Super.1999). Furthermore, we agree with the trial court that the circumstance of changing the definition of navigability is best addressed by the legislature due to the takings problem created by vesting title in the Commonwealth to a vast expansion of navigable (public) waterways.

¶ 14 In another attempt to change existing Pennsylvania law Tyler Hill Realty next argues this Court should move away from the common law rule regarding water usage. The common law rule provides that ownership of a lakebed includes ownership of the water above it, and the owner of the lakebed can prevent others from utilizing his or her property. *Smoulter v. Boyd*, 209 Pa. 146, 58 A. 144 (1904). Tyler Hill Realty asks the Court to adopt the "civil rule" regarding utilization of lakes, which provides that ownership of a portion of a body of water allows utilization of the whole body of water. *See*

*Beacham v. Lake Zurich Property Owners Association,* 123 Ill.2d 227, 122 Ill.Dec. 14, 526 N.E.2d 154 (1988). We decline to abandon the long-standing common law rule. Moreover, it is not in our province to do so. *Hutchison; Moses.*

¶ 15 In its final issue, Tyler Hill Realty asserts the trial court erred in finding there was an agreement for payment of $25,000 .00 for use of Laurel Lake during the 1997 camping season. It maintains there was no evidence to establish a contractual relationship.

¶ 16 It is well settled that in order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. *Schreiber v. Olan Mills,* 426 Pa.Super. 537, 627 A.2d 806, 808 (1993). The question of whether an undisputed set of facts establishes a contract is a matter of law. *Refuse Management Systems v. Consolidated Recycling & Transfer Systems,* 448 Pa.Super. 402, 671 A.2d 1140, 1146 (1996). An offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted. *O'Brien v. Nationwide Mut. Ins. Co.,* 455 Pa.Super. 568, 689 A.2d 254, 259 (1997); *Accu–Weather, Inc. v. Thomas Broadcasting Co.,* 425 Pa.Super. 335, 625 A.2d 75, 78 (1993). "Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person in the position of the parties would be led to understand by such conduct under all of the surrounding circumstances." *Temple University Hospital, Inc. v. Healthcare Management Alternatives, Inc.,* 764 A.2d 587, 2000 PA Super 387(quoting John Edward Murray, Jr., Murray on Contracts § 37, at 82 (3rd ed.1990)). "In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent." *Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025, 1033 (1993).

¶ 17 The record demonstrates that Tyler Hill Realty and its predecessor in interest, Tyler Hill Camp, paid Mountain Properties a monetary fee to rent Laurel Lake each year. In 1994 and 1995, Tyler Hill Realty paid a $10,000.00 rental fee to Mountain Properties for use of the lake. In 1996, Tyler Hill Realty offered Mountain Properties $10,000.00 to rent the lake, which Mountain Properties accepted. In April 1997 Mountain Properties offered to rent the lake for a fee of $25,000.00. Although Tyler Hill Realty did not respond to this written offer, when the President of Mountain Properties requested the $25,000.00 fee Tyler Hill Realty's representative stated, "I hear you." This oral acknowledgement, coupled with the fact Tyler Hill Realty utilized the lake during the 1997 season, as well as the fact Tyler Hill Realty had always paid a rental fee to use the lake, demonstrates that an offer and an acceptance through conduct occurred. A reasonable person would be led to understand that an agreement existed based on Tyler Hill Realty's conduct of orally acknowledging Mountain Properties' offer and subsequent utilization of the lake during the 1997 season in light of the parties' past agreements. Such intent is sufficient evidence to support the trial court's finding that an agreement existed between the parties. We find, therefore, that the trial court's conclusion that an agreement existed between Mountain Properties and Tyler Hill Realty was reasonable, and was not an error of law.

¶ 18 Judgment affirmed.