2026 PA Super 119

| DAVID LEVIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| PRIME COMMUNICATIONS INC. AND AT&T | : | |
| Appellants | : | No. 874 EDA 2025 |

Appeal from the Order Entered March 10, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at No(s): November Term, 2023 No. 02081

BEFORE: BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY McLAUGHLIN, J.: **FILED JUNE 9, 2026**

Prime Communications Inc. ("Prime")[1] and AT&T (collectively, "Appellants") appeal from the order overruling their preliminary objection seeking to compel arbitration. Appellants argue that the plaintiff, David Levin, electronically assented to an agreement to arbitrate. We vacate and remand.

Levin filed a complaint and two amended complaints against Appellants, asserting breach of an employment agreement and related claims. Levin's second amended complaint alleged that Levin did "not recall ever signing an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The parties asserted below that Prime's name was improperly pleaded as Prime Communications Inc. and is properly Prime Comms Retail, LLC. ***See*** Second Am. Complaint, 6/24/24, at 3, ¶¶ 4, 5; Prelim. Objs. of Defs. Prime Comms Retail LLC, Improperly Pled as, Prime Communications, Inc., and AT&T to Pltf.'s Second Am. Complaint ("Prelim. Objs."), 7/15/24, at 1. However, the caption was not changed.

agreement to arbitrate" and "never signed any agreement to arbitrate[.]" Second Am. Complaint at 4, ¶¶ 11-12.

Appellants filed preliminary objections asking the court to dismiss the second amended complaint so the parties could pursue arbitration.[2] They averred that Levin's employment was subject to an arbitration agreement. Prelim. Objs. at 3, ¶ 16. Appellants attached a document titled, "Mutual Agreement to Arbitrate" ("2022 MAA"). It relates to arbitration of claims relating to "employment or other relationship with Prime." ***Id.***, Ex. F at 1 (unpaginated). The 2022 MAA text does not identify the applicable employee by name. It states,

> I agree with Prime Comms retail, LLC, its related business affiliates, successors, assigns, benefit plans, benefit plan sponsors (the "Related Companies") and/or any current or former employee, officer or other agent of Prime's Related Companies (collectively, "Prime"),[3] to use binding individual arbitration to resolve any "Covered Claims" that arise between Prime and me.

***Id.*** It contains a signature page stating:

> My electronic signature below confirms that:
>
> - I am entering this Agreement voluntarily.
> - I acknowledge that I have carefully read this Agreement and the I am HEARD program, and understand all the terms, and all understandings and agreements between Prime and me relating to our Mutual Agreement to Arbitrate, my Waiver of Right to

---

[2] Appellants asserted other preliminary objections that are not at issue in this appeal.

[3] Levin does not dispute that Appellants are covered by the arbitration agreements.

> Jury or Trial by Judge, and my Waiver of Class, Collective, Consolidated, or Representative Claims are contained in this Agreement and the I am HEARD program. I did not rely on any promises or representations by Prime, other than those contained in this Agreement and the I am HEARD program.
>
> - I also acknowledge that I have been given the opportunity to consult with my private legal counsel or other advisor before signing this Agreement, I [sic] and have either done so or voluntarily decided to decline my opportunity to do so.

***Id.***, Ex. F, at 6 (unpaginated). We will refer to this language as the "electronic signature statement." Below the electronic signature statement is the signature of Prime's Vice President of Human Resources. Although there are lines for "Employee Signature" and "Date," they are blank. ***See id.***

Appellants alleged that although Levin had alleged that he did not recall signing an arbitration agreement or in fact had not signed one, Levin had acknowledged the 2022 MAA. ***Id.*** at 4, ¶ 19. Appellants attached to their preliminary objections a February 6, 2024 "Policy Acknowledgment Status Report" bearing Levin's name. ***See id.***, Ex. G, at 1 (unpaginated). It contains a table listing documents by "policy name" down the left column. Other columns list information for each document, including "Acknowledge Date." The report lists an "Arbitration Agreement" with an "Acknowledge Date" of January 7, 2022.

Levin filed a response denying that he had "acknowledged" the 2022 MAA. He also pointed out that the 2022 MAA did not bear his signature. Response in Opposition to Prelim. Objs., 8/2/24, at 3, ¶¶ 16-17, 19-20. He also contended that the Policy Acknowledgement Form did not prove he signed

the 2022 MAA, post-dated his claims, and did not specify the "Arbitration Agreement" to which it refers. ***Id.***, ¶ 19. Levin argued that Appellants had failed to prove he was bound by the 2022 MAA. He did not attach any exhibits or affidavits to his response.

In reply, Appellants submitted the declaration of Prime's associate director of human resources, Shanesta Jacobs.[4] Jacobs asserted that Levin was initially employed by another company, Spring, which Prime acquired on January 16, 2019. ***See*** Jacobs Decl. at 1, ¶¶ 4-5. She stated that Prime then offered employment to Levin and that he was given, among other things, a prior Mutual Agreement to Arbitrate ("2019 MAA"), which she appended to her declaration. ***Id.***, ¶ 6 & Ex. A. Like the 2022 MAA, the 2019 MAA includes the electronic signature statement. ***See id.***, Ex. A at 5. However, unlike the 2022 MAA, the 2019 MAA bears no signatures or signature lines under the electronic signature statement. ***See id.***

Jacobs's declaration stated that Levin had electronically agreed to the 2019 MAA. Jacobs maintained that Prime used an online human resources information system and Levin had a unique username and password to log into it. ***Id.*** at 2, ¶ 7. She asserted that on February 13, 2019, Levin used his

---

[4] ***See*** Reply Br. of Defs. Prime Comms Retail LLC, Improperly Pled as, Prime Communications, Inc. in Support of Prelim. Objs. ("Reply Br."), Ex. A ("Jacobs Decl."). The beginning of the declaration states that Jacobs "declare[s] the following information under penalty of perjury." ***Id.*** at 1. At the end, the declaration states that Jacobs "declare[s] that the foregoing is true and correct to the best of my knowledge, information, and belief, subject to the penalties of 18 Pa. Const. Stat. § 4904 relating to unsworn falsifications to authorities." ***Id.*** at 4. At the end of the declaration is a signature for Jacobs.

username and password to sign into the system and "was prompted to review and acknowledge" the 2019 MAA. ***Id.***, ¶ 8. Jacobs stated the screen that "presented" the 2019 MAA had a prompt containing the electronic signature statement. ***Id.***, ¶ 10. She averred that "[a]n employee can agree to this signature statement by checking a box labelled 'I agree' immediately below this statement." ***Id.*** According to Jacobs, Levin agreed by electronically checking the box labelled "I agree." ***Id.***, ¶ 11. She stated that Levin was the only person with access to his username and password and "the only person who could have accessed his account and clicked the 'I agree' box[.]" ***Id.***, 3, ¶ 12.

Attached to Jacobs's declaration was a report that she referred to as a "Policy Acknowledgement History." ***See id.***, Ex. B. She stated that it "reflects that Mr. Levin acknowledged the [2019 MAA] via e-signature on February 13, 2019." ***Id.*** at 2, ¶ 11 & Ex. B. The Policy Acknowledgment History contains a table with columns bearing headings that include "document," "signature type," "signed by," "signature date," and "signature statement." Documents are listed by name under the "document" column, and corresponding information appears under each column to the right of the document name. Next to the name of a document called "Mutual Agreement to Arbitrate (Spring Mobile)," the "signed by" column lists Levin's name; the "signature type" column shows "e-signature"; and the "signature date" column has a time-stamp for 4:01:01 p.m. on February 13, 2019. ***Id.***, Ex. B at 8. The "signature

statement" column for this document contains the electronic signature statement. ***Id.***

Jacobs stated that Levin followed a similar procedure and electronically agreed to the 2022 MAA. She stated that Prime employees obtain a unique username and temporary password. ***Id.*** at 3, ¶ 13. She asserted that on January 7, 2022, Levin used his username and password to log into Prime's electronic human resources information system. ***Id.*** at 3-4, ¶¶ 17-18. She declared that after doing so, Levin was prompted to acknowledge the 2022 MAA and had to open it before acknowledging it. ***Id.*** at 3-4, ¶ 18.

Jacobs averred that Levin's screen "displayed an acknowledgement box that required him to [(1)] read what he was agreeing to, [(2)] click a box next to the word [']acknowledge['], and then [(3)] press a button that says[,] 'Acknowledge Policy.'" ***Id.*** at 4, ¶ 20. Jacobs stated that before checking the box or pressing the button, Levin saw a message stating that by clicking the box, he was signing and agreeing to the 2022 MAA:

> By clicking this box, I am signing this Mutual Agreement to Arbitrate and I acknowledge, accept and agree to be bound by the terms of this Mutual Agreement to Arbitrate. I understand and accept that this document creates an enforceable contract between me and Prime. I understand that this creates a mutually enforceable obligation on me and Prime to arbitrate any and all disputes between me and Prime. I understand that this contract may not be modified or superseded except in a written agreement signed by me and Prime Vice President of Human Resources.

***Id.***, ¶ 21. She stated that Levin electronically agreed to the 2022 MAA by clicking the "acknowledgement" box and the "Acknowledged Policy" button. ***Id.*** at 4, ¶ 22.

As corroboration, Jacobs attached the previously submitted "Policy Acknowledgment Status Report." ***See id.***, Ex. D. She maintained the report "bears electronic date stamps for documents reviewed and accepted by Mr. Levin." ***Id.*** at 3, ¶ 16.

Levin submitted a sur reply, offering no new evidence. The court entered a rule to show cause, granting the parties leave to submit supplemental briefs. It also stated that the court would accept "affidavits, deposition testimony, and documentary evidence relevant to the issue of whether a valid arbitration agreement exists between the parties." Order, 12/2/24, at 1. Both sides submitted supplemental briefing. Appellants' supplemental brief again provided the court with Jacobs's declaration and exhibits. Levin's supplemental brief provided no evidence.

The court overruled the preliminary objection. It relied on ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa.Super. 2015). It observed that there, this Court found an arbitration agreement unenforceable because its language required both parties' signatures in order to be binding, and one of the parties had never signed it. Trial Ct. Op., 7/18/25, at 9. The trial court found that here, in including the electronic signature statement, both versions of the MAA required Levin's electronic signature. However, according to the court, none of the exhibits proved Levin had signed either version of the MAA, electronically or otherwise.

The court found that Appellants had not produced "evidence of an arbitration agreement bearing" Levin's signature. ***Id.*** at 10. Regarding the

2019 MAA, the court concluded that although the 2019 MAA stated that Levin's "signature below" "confirm[ed] his agreement," there was no signature page or a place for a signature. ***Id.*** at 9. The court noted that while the Policy Acknowledgment History refers to Levin's entry of an "e-signature" for the 2019 MAA, it did "not contain Mr. Levin's e-signature or an 'I agree' box as referenced in Ms. Jacobs'[s] [d]eclaration." ***See id.*** at 7. As for the 2022 MAA, the court noted that the 2022 MAA contained a blank "Employee Signature" line. ***See id.*** at 8, 9.

The court also stated that it could not consider Jacobs's declaration because it was "extrinsic evidence." ***Id.*** at 9. In the court's view, "[w]hile the [d]eclaration is informative, the validity of this contract must be construed from the contract itself." ***Id.*** Concluding that Appellants failed to produce "evidence of the mutual assent of the parties to the arbitration agreement," the court overruled the preliminary objection. ***Id.*** at 10.

Appellants timely appealed. We have jurisdiction. An order denying a motion to compel arbitration is appealable as of right. ***See*** 42 Pa.C.S.A. §§ 7320(a)(1), 7321.29(a)(1), 7342(a); ***compare McCrossin v. Comcast Spectacor, LLC***, 311 A.3d 1115, 1121 (Pa.Super. 2024) ("An order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right"), *appeal denied*, 329 A.3d 582 (Pa. 2024), ***with Chilutti v. Uber Techs., Inc.***, 349 A.3d 826, 834 (Pa. 2026) (finding an order granting a petition to compel arbitration was not appealable).

They raise the following issues:

> 1. Whether the trial court erred and/or abused its discretion by refusing to enforce the Mutual Agreement to Arbitrate, where Appellants presented contemporaneous Policy Acknowledgment [Human Resources Information System ("HRIS")] records and sworn testimony establishing [Levin's] assent, and [Levin] offered no evidence to the contrary?
>
> 2. Whether the trial court misapplied Pa.R.C.P. 1028(c)(2) by excluding competent evidence of contract formation—including the Jacobs Declaration and Policy Acknowledgement History—on the ground that it was "extrinsic"?
>
> 3. Whether electronic signatures and acknowledgements, expressly validated by Pennsylvania's Uniform Electronic Transactions Act and recognized by Pennsylvania courts, constitute a valid means of proving assent to arbitration agreements?
>
> 4. Whether the trial court erred and/or abused its discretion by failing to apply the strong federal and state policy favoring arbitration under the Federal Arbitration Act and Pennsylvania law?
>
> 5. Whether the trial court's reliance on ***Bair v. Manor Care*** was misplaced, wherein that case involved an agreement with no proof of assent, and whereas here the record contained contemporaneous proof of electronic assent?

Appellants' Br. at 4-6 (suggested answers omitted).

Although Appellants' Statement of Questions Presented lists five issues, they divide their argument into two sections. Their doing so violates Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Because in this instance the violation does not substantially hinder appellate review, we will not quash. ***See Thompson v. Thompson***, 187 A.3d 259, 263 n.1 (Pa.Super. 2018).

Appellants first argue that the court erred in disregarding Jacobs's declaration and supporting exhibits. They assert that in deciding preliminary

objections, courts may consider extrinsic evidence such as affidavits. ***See*** Appellants' Br. at 13 (citing Pa.R.Civ.P. 1028(c)(2) and ***Mazzuca v. Abreu***, 310 A.3d 775, 789 (Pa.Super. 2024)). They contend this applies when the preliminary objection seeks to compel arbitration. ***Id.*** at 13-14 (citing ***Stern v. Prudential Fin., Inc.***, 836 A.2d 953 (Pa.Super. 2003)). Appellants observe that in ***Davis v. Center Management Group, LLC***, 192 A.3d 173, 183 (Pa.Super. 2018), this Court held the trial court violated Rule 1028 in refusing to consider evidence regarding the validity of an arbitration agreement at the preliminary objection phase. Appellants argue that under ***Davis***, the court here should have considered their evidence when determining whether Levin electronically signed the arbitration agreement or otherwise assented to its terms. They assert the court erred in applying the parol evidence rule and/or four-corners rule when determining whether Levin had agreed to the MAA. They argue those rules govern when constructing the terms of an agreement, not when determining its existence.

Second, Appellants argue that electronic signatures are valid under both state and federal law. Appellants' Br. at 21 (citing 73 P.S. § 2260.104). They assert that the authenticity of electronic records and signatures may be established through circumstantial evidence. ***Id.*** at 22 (citing 73 P.S. § 2260.305 and ***Vaughan v. Williams***, No. 725 EDA 2023, 2024 WL 1231352 (Pa.Super. Mar. 22, 2024) (unpublished mem.)). Appellants claim that they presented evidence authenticating Levin's electronic assent to the MAA. Appellants thus argue that the court's reliance on ***Bair*** is misplaced, because

in that case, there was no evidence that the contesting party had ever assented to the arbitration agreement. Finally, Appellants assert that any doubt as to whether there was mutual assent should be resolved in favor of the policy favoring arbitration.

We review a claim that the trial court improperly overruled a preliminary objection to compel arbitration to determine "whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." ***Fineman, Krekstein & Harris, P.C. v. Perr***, 278 A.3d 385, 389 (Pa.Super. 2022) (citation omitted).

"Arbitration cannot be compelled in the absence of an express agreement to arbitrate." ***Bair***, 108 A.3d at 96. This requires the mutual assent of the parties. ***Id.*** The party seeking to compel arbitration bears the burden of proving the parties manifested an assent to be bound by an arbitration agreement. ***Duffy v. Tatum***, --- A.3d ----, 2026 WL 587629, at *7 (Pa.Super. Mar. 3, 2026). If a preliminary objection seeking to compel arbitration raises an issue of fact, the court must allow the parties to produce any additional evidence required to resolve the factual conflict. ***See*** Pa.R.C.P. 1028(c)(2); ***Davis***, 192 A.3d at 183; ***Stern***, 836 A.2d at 955. The court may resolve a factual dispute presented by preliminary objections based on affidavits only if the facts set forth in the affidavits are "clear and specific" and undisputed. ***Stern***, 836 A.2d at 955 (applying rule of ***Borough of Nanty-Glo v. Am.***

***Surety Co. of N.Y.***, 163 A. 523 (Pa. 1932) to the resolution of fact questions on preliminary objections).[5]

A party may assent to an arbitration agreement by taking "any action that manifested his assent to be bound" by its terms. ***Duffy***, 2026 WL 587629 at *6; ***Rambo v. Greene***, 906 A.2d 1232, 1236 (Pa.Super. 2006) ("In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter"). Whether the party's actions evinced assent "must be determined on the basis of what a reasonable person in the position of the part[y] would be led to understand by such conduct under all of the surrounding circumstances." ***Mountain Props., Inc. v. Tyler Hill Realty Corp.***, 767 A.2d 1096, 1101 (Pa.Super. 2001) (citation omitted).

A party need not sign an arbitration agree to be bound by its terms unless a signature is "required by law or by the intent of the parties." ***Bair***, 108 A.3d at 98.[6] In ***Bair***, we held the parties intended that the arbitration agreement — a paper document — would require the signatures of both parties to be binding. Above the signature lines, the agreement stated,

> THE PARTIES CONFIRM THAT EACH OF THEM UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO TRIAL BEFORE A JUDGE OR JURY AND THAT EACH CONSENTS TO ALL OF THE TERMS OF

---

[5] ***See also Carr v. First Com. Bank***, No. 1130 WDA 2021, 2023 WL 1794264, at *9 (Pa.Super. Feb. 7, 2023) (unpublished mem.).

[6] Neither party here contends a signature was required by statute. ***See Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.***, 739 A.2d 133, 136 (Pa. 1999).

> THIS VOLUNTARY AGREEMENT. PATIENT ACKNOWLEDGES THE RIGHT TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OR FAMILY BEFORE SIGNING.

***Id.*** at 97 (boldface removed). We observed that one of the parties had failed to sign it,[7] and held the other evidence offered to prove intent — the party's having drafted and offered the agreement to the other, the failure to fill in essential terms, and its having signed a previous arbitration agreement — were insufficient to otherwise prove mutual assent. ***Id.*** at 98.

A signature may be rendered electronically. Electronic signatures are governed by Pennsylvania's Uniform Electronic Transactions Act ("UETA"). ***See*** 73 P.S. §§ 2260.101–2260.503. The UETA defines an "electronic signature" as "[a]n electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." ***Id.*** at § 2260.103.

The UETA provides that an electronic signature is attributable to a person if it was "the act" of that person. 73 P.S. § 2260.305(a). This may be established "in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." ***Id.***; ***see also Vaughan,*** 2024 WL 1231352, at *3 (addressing authentication of an electronic signature under the UETA); ***Pinckney v. Taylor***, No. 617 EDA 2023, 2024 WL 1134054, at **4 (Pa.Super. Mar. 15, 2024) (unpublished mem.) (same).

---

[7] In ***Bair***, the defendant seeking to compel arbitration was the party that failed to sign the agreement.

The legal effect of an electronic signature is determined "(1) from the context and surrounding circumstances at the time of its creation, execution or adoption, including the parties' agreement, if any; and (2) otherwise as provided by law." 73 P.S. § 2260.305(b). The official comment to the corresponding section of the uniform act explains that a "click-through" process, if attributed and "executed with an intent to 'sign,'" constitutes an electronic signature. ***See*** Unif. Elec. Transactions Act § 9 (1999), Comment.[8]

Whether a person executed an electronic signature is a question of fact that depends on the person's "intention to sign, or otherwise accomplish a legally binding act." ***See id.*** § 2, Comment. The requirement of a signature can be satisfied by a person's "adoption of [a] process [that] carrie[s] the intent to do a legally significant act," such as clicking "I agree." ***Id.*** at Comment; ***see also*** Jeremiah S. Buckley, *et al.*, The Law of Electronic Signatures and Records § 6:3 (May 2024 Update) (stating the UETA's definition of "electronic signature" would include "a click-through on a software program's dialog box combined with some other identification process").

---

[8] The General Assembly has directed us to interpret and construe uniform acts "to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa.C.S.A. § 1927. We therefore consider the comments to the uniform act to be highly persuasive.

Here, Appellants argue that Levin manifested his assent to the 2019 MAA by clicking the "I agree" box,[9] and to the 2022 MAA by clicking the "acknowledge" box and the "Acknowledge Policy" button. Appellants offered evidence, by way of Jacobs's declaration and supporting documents, to establish that Levin himself performed these acts. Levin alleged that he did not sign the MAAs, and argued that Appellants failed to carry their burden to prove he assented to them. However, he did not offer any evidence to contest Appellants' evidence.

The facts Jacobs asserts in her affidavit, if true, are sufficient to establish that Levin assented to the 2019 MAA and 2022 MAA. According to Jacobs, in the case of the 2019 MAA, Levin was presented with a screen prompt stating that the entry of his electronic signature would bind him to the 2019 MAA. In response, he clicked a box stating, "I agree." In the context of the surrounding circumstances, a reasonable person in Levin's position would understand that this action would constitute a signature and legally bind him to the agreement. ***See*** 73 P.S. § 2260.305(b); ***Mountain Properties***, 767 A.2d at 1101. By clicking the box, Levin manifested his intent to be bound to the 2019 MAA.

Regarding the 2022 MAA, Appellants submitted evidence that Levin was presented with a screen that required him to view the 2022 MAA; clicked a

---

[9] While the Policy Acknowledgment History references Levin's "e-signature" to the 2019 MAA, Jacobs's declaration explains that Prime's system created this record when Jacobs clicked an "I agree" box under the electronic signature statement.

box next to the word "acknowledge"; and pressed a button that said, "Acknowledge Policy." Jacobs's declaration at ¶ 20. The screen prompt stated,

> **By clicking this box, I am signing this Mutual Agreement to Arbitrate** and I acknowledge, accept and agree to be bound by the terms of this Mutual Agreement to Arbitrate. I understand and accept that this document creates an enforceable contract between me and Prime. I understand that this creates a mutually enforceable obligation on me and Prime to arbitrate any and all disputes between me and Prime. I understand that this contract may not be modified or superseded except in a written agreement signed by me and Prime Vice President of Human Resources.

***Id.*** at ¶ 21 (emphasis added). Thus, the prompt notified Levin that clicking the "acknowledge" box would constitute a signature and bind him to the 2022 MAA. These circumstances were sufficient to establish that by clicking the box, Levin "agreed in a clear and unmistakable manner" to be bound to the 2022 MAA. ***Cook v. Phila. Fed. Credit Union***, 353 A.3d 803, 813, (Pa.Super. 2026) (quoting ***Bair***, 108 A.3d at 97); ***see*** 73 P.S. § 2260.305(b).[10]

---

[10] This Court's recent decision in ***Duffy***, 2026 WL 587629, at *8, is not to the contrary. The instant case involves an employment agreement, not a purchase agreement. ***See Cobb v. Tesla, Inc.***, No. 2879 EDA 2024, 2026 WL 458470, at *4 n.6 (Pa.Super. Feb. 18, 2026) (unpublished mem.) (finding that precedent involving arbitration agreement in an online "browsewrap" purchase agreement did not apply to arbitration agreement within an employment agreement).

Moreover, ***Duffy*** did not consider the issue we presently address. There, we considered whether a website's box bearing a label stating that by clicking, the purchaser agreed to the seller's terms of service, was reasonably obvious notice that the buyer was agreeing to waive the right to a jury trial. ***See Duffy***, 2026 WL 587629, at *1. Here, we are concerned with whether the circumstances were sufficient under the UETA to establish that Levin electronically signed the arbitration agreements.

The trial court therefore abused its discretion by failing to determine whether, under the UETA, Levin electronically signed the 2019 MAA or the 2022 MAA. Because Jacobs's affidavit was presented by the movant, it is an insufficient basis on its own to resolve the factual questions as a matter of law, and we must remand. ***See Carr***, 2023 WL 1794264, at *9 (citing ***Stern***, 835 A.2d at 955). We therefore vacate the order overruling the preliminary objection and remand to the trial court. If it finds that Levin electronically signed either MAA, it shall then consider whether the dispute is within the scope of the arbitration agreement. ***See Fineman***, 278 A.3d at 389 (stating court must first determine whether a valid arbitration agreement exists and second, determine whether it encompasses the plaintiff's claims); ***Cobb***, 2026 WL 458470, at *5 (remanding for court to reach question of whether parties' dispute fell within the scope of arbitration agreement).

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2026