J-A31002-14

2015 PA Super 9

| | |
|---|---|
| M. SYLVIA BAIR, EXECUTRIX OF THE ESTATE OF MARTHA A. EDWARDS, DECEASED,<br><br>               Appellee<br><br>            v.<br><br>MANOR CARE OF ELIZABETHTOWN, PA, LLC D/B/A MANORCARE HEALTH SERVICES-ELIZABETHTOWN, MANORCARE HEALTH SERVICES, INC., MANOR CARE, INC., HCR MANORCARE, INC., HCR HEALTHCARE, LLC, HCR II HEALTHCARE, LLC, HCR III HEALTHCARE, LLC, HCR IV HEALTHCARE, LLC,<br><br>               Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 435 MDA 2014 |

Appeal from the Order Entered January 31, 2014
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): 12-17156

BEFORE:  BOWES, OTT, and STABILE, JJ.

OPINION BY BOWES, J.:                    **FILED JANUARY 15, 2015**

Manor Care of Elizabethtown, PA, LLC d/b/a Manorcare Health Services – Elizabethtown and other Manor Care and HCR defendants (collectively "Manor Care") appeal from the January 31, 2014 order overruling their preliminary objections pursuant to Pa.R.C.P. 1028(a)(6), and finding no agreement to arbitrate. After thorough review, we affirm.

M. Sylvia Bair, Executrix of the Estate of Martha A. Edwards ("Decedent"), commenced this wrongful death and survival action against

Manor Care alleging that neglect and abuse of her mother during her stay in its facility from April 15, 2011 through July 8, 2011, ultimately caused her death on October 5, 2011. Manor Care filed preliminary objections to the complaint seeking to have the case referred to arbitration pursuant to the terms of an arbitration agreement executed by Ms. Bair on behalf of Decedent upon admission to the facility. The trial court permitted discovery on the issue of the enforceability of the arbitration agreement.

Sylvia Bair was deposed and testified as follows. Ms. Bair arrived at Manor Care on April 15, 2011, and was presented with admissions paperwork for her mother, Martha Edwards. According to Ms. Bair, that person was not the Admissions Director Dale Young, but a female administrator. No one explained the nature of the arbitration agreement and Ms. Bair did not recall discussing the agreement with anyone at the facility. Bair Deposition, 6/3/13, at 33-34. Ms. Bair signed all the paperwork at that time. *Id*. at 35. Ms. Bair testified that she believed that the agreement had to be signed in order to facilitate her mother's admission. *Id*. at 48. She possessed a power of attorney from her mother dated May 5, 2000, and she signed the agreement on the line designated for the personal representative of the patient. No Manor Care representative completed or signed the form on behalf of the entity.

During her deposition, Ms. Bair was also shown an executed arbitration agreement dated June 24, 2009. She identified the signature of the

patient's legal representative as her signature, although she had no recollection of signing the form, but confirmed that her mother had been a patient in Manor Care at that time. In contrast to the 2011 agreement, the blanks on the form for the date and the names of the parties were completed and it was signed by all parties.

Manor Care offered Dale Young, the facility's Admissions Director at the time of Decedent's admission, for deposition. While Mr. Young was the person who usually supervised the admissions process, he had no recollection of Ms. Bair and could not confirm that he presented the admission paperwork to her. His testimony was limited to what he routinely would advise new patients or their representatives about the arbitration agreement, and not based upon any specific recollection of a conversation with Ms. Bair.

The trial court overruled Manor Care's preliminary objections, thus permitting the litigation to proceed in the court of common pleas. Manor Care timely appealed and raises one issue for our review:

> 1. Whether the trial court erred as a matter of law in concluding that Manor Care did not accept the subject Arbitration Agreement based on the lack of a signature of the nursing home representative on the agreement itself?

Appellant's brief at 4.

This appeal, though interlocutory, is appealable as of right pursuant to Pa.R.A.P. 311(a)(8), which provides that an interlocutory appeal may be taken as of right from "an order which is made appealable by statute or

- 3 -

general rule." The Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. § 7320 *et seq.*, provides that an appeal taken from an order denying a petition or application to compel arbitration is appealable. 42 Pa.C.S. §§ 7320(a)(1), 7342.

In reviewing a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration, we are "limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Gaffer Ins. Co. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112 (Pa.Super. 2007). Since contract interpretation is a question of law, "our review of the trial court's decision is *de novo* and our scope is plenary." *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth*, 925 A.2d 868, 871 (Pa.Super. 2007).

Arbitration cannot be compelled in the absence of an express agreement to arbitrate. *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279 (2002); *Emlenton Area Municipal Authority v. Miles*, 548 A.2d 623, 625 (Pa.Super. 1988). The touchstone of any valid contract is mutual assent and consideration. The issue of whether parties agreed to arbitrate is generally one for the court, not the arbitrators. *Gaffer*, *supra*; *Ross Development Co. v. Advanced Building Dev., Inc.*, 803 A.2d 194 (Pa.Super. 2002). When addressing that issue, courts generally apply ordinary state law contract principles, "but in doing so, must give due regard to the federal

policy favoring arbitration." ***Gaffer***, ***supra*** at 1114 n.7. If the court determines there is a valid agreement, it must then determine if the dispute in question is within the scope of the agreement. We are mindful that the burden was on Manor Care to demonstrate that a valid agreement to arbitrate existed between the parties, and that the dispute was within the scope of the agreement. 42 Pa.C.S. § 7304(a).

The "Voluntary Arbitration Agreement" at issue is a form with blanks on the first page for the insertion of the names of the contracting parties and the date. None of these blanks was completed. In addition, the agreement provides that, "arbitration is described in the voluntary arbitration program brochure," a copy of which is "attached and made part of this agreement." Voluntary Arbitration Agreement, at 1. The brochure was not attached.

Above the signature lines, the agreement provides, in bold capital letters,

> **THE PARTIES CONFIRM THAT EACH OF THEM UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO TRIAL BEFORE A JUDGE OR JURY AND THAT EACH CONSENTS TO ALL OF THE TERMS OF THIS VOLUNTARY AGREEMENT. PATIENT ACKNOWLEDGES THE RIGHT TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OR FAMILY BEFORE SIGNING**.

There are signature lines for the Patient, the Patient's Legal Representative in both his/her representative capacity and in his/her individual capacity, and for the Center Representative. Ms. Bair signed as

the Patient's legal representative, but only in her representative capacity; the signature line for the Center Representative is blank.

It is Manor Care's position that the lack of a signature by a facility representative does not render the agreement unenforceable. It cites **Hopkins v. New Day Fin.**, 643 F.Supp.2d 704, 720 (E.D. Pa. 2009), for the proposition that the writing need not be signed by either party, and certainly not the party attempting to enforce it. Manor Care relies upon decisions from other jurisdictions in support of its position that an agreement is enforceable if it is executed by the party to be held to its terms. Manor Care maintains that its presentation of the form agreement to Ms. Bair constituted an offer to arbitrate; by signing the agreement, Ms. Bair accepted the offer. Thus, Manor Care submits that it manifested its intent to submit to arbitration any and all disputes that might arise. In addition, Manor Care asserts that the fully executed arbitration agreement from Decedent's prior admission in 2009 did not support the trial court's inference that Manor Care did not intend to be bound by the unsigned 2011 agreement.

Ms. Bair counters that the form does not indicate who the parties are or that the parties agreed on the "material and necessary details of their bargain." **Lackner v. Glosser**, 892 A.2d 21, 30 (Pa.Super. 2006). The fact that the form was "facially devoid of essential terms[,]" not just the signature, renders it unenforceable. She continues the parties are unidentified; the definition line of the party only references "Center." It is

undated.  Ms. Bair argues that there are no indicia of mutual assent.  She maintains that the alleged agreement expressly requires both parties to confirm that they are waiving their right to a jury trial and consenting to the terms of the agreement by affixing their signatures.  The fact that there is a signature line for "Center Representative" and that it is blank further indicates that there was no mutual assent.  ***See Baier v. Darden Restaurants***, 420 S.W.3d 733, 739 (Mo. Ct. App. 2014).

The trial court determined that there was no agreement in 2011.  It arrived at that conclusion after viewing the signed arbitration agreement in 2009 as evidence from which one could reasonably infer that Manor Care did not intend to be legally bound by the unsigned agreement in 2011.  Manor Care challenges the reasonableness of that inference and asserts that this prior dealings evidence suggests instead that Ms. Bair intended to enter into an agreement to arbitrate.

The issue is not whether the arbitration agreement was signed by the party sought to be bound, but whether there was a meeting of the minds, that is, whether the parties agreed in a clear and unmistakable manner to arbitrate their disputes.  The trial court concluded that the parties did not agree, and we concur.  Even if we were to view the presentation of the form as an offer, as Manor Care suggests, it lacked essential terms such as the names of the contracting parties, the date of the agreement, and the brochure describing the arbitration process, which was expressly made part

of the agreement. "[A]n offer to contract must be intentional and sufficiently definite in its terms, and no offer will be found to exist where its essential terms are unclear." *Lackner*, *supra* at 31 (quoting *Beaver Valley Alloy Foundry, Co. v. Therma-Fab, Inc.*, 814 A.2d 217, 222 (Pa.Super. 2002)).

We note, too, that while the absence of signatures is not fatal unless required by law or by the intent of the parties, the agreement herein expressly required the signatures of both parties. The bold-print language above the signature lines established that "the parties" confirmed that they waived the right to a trial and consented to arbitration by signing the agreement on the designated lines. In light of the fact that Manor Care supplied the form document and terms therein, it is presumed to have known the effect of its terms and conditions. By failing to affix its signature, Manor Care did not consent to arbitrate. Herein, the party seeking to enforce the arbitration agreement is the party who did not sign the document. Absent mutual assent, there was no enforceable agreement to arbitrate.

Finally, Manor Care takes issue with the inference drawn by the trial court from the parties' prior course of dealing. It argues that the proper inference from the 2009 executed arbitration agreement was that Ms. Bair intended to enter into an agreement to arbitrate disputes, not that the signature of the Manor Care representative was required for an enforceable

agreement.[1]  Manor Care's argument misses the mark.  Absent herein was mutual assent of the parties to the alleged contract.  It was not Ms. Bair's consent that was the problem; it was Manor Care's failure to fill in essential terms such as the names of the parties and sign the agreement that fell short in manifesting its consent to arbitrate.  The 2009 signed arbitration agreement was prior course of dealing evidence from which the trial court reasonably inferred that Manor Care typically consented to arbitration by completing the blanks and signing the agreement, which it did not do in 2011.  For these reasons, we find no abuse of discretion on the part of the trial court in overruling the preliminary objections and refusing to compel arbitration.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2015

---

[1]  Manor Care does not argue on appeal that language in the executed 2009 arbitration agreement providing that "this Agreement shall be binding on the Patient for this and all of the Patient's other admissions to the Center without any need for further renewal" compels arbitration herein. Arbitration Agreement, 6/24/09, at ¶ E.