J-A26019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1943 WDA 2015 |
| B. KEPPEL TRUCKING, LLC | : | |

Appeal from the Order December 1, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  G.D.13-18152

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY RANSOM, J,:                    **FILED DECEMBER 13, 2016**

Pittsburgh Logistics Systems, Inc. (Appellant) appeals from the order entered December 1, 2015, granting B. Keppel Trucking, LLC's (Appellee) petition to confirm an arbitration award and granting judgement thereon. We affirm.

Appellant is a third-party logistics company that, among other services, brokers transportation of freight between shippers and trucking companies.  *See* Pet. To Stay Arbitration 9/10/13.  In September of 2009, Appellant began doing business with Appellee, a large trucking company. Keppel Dep., 12/3/15, 21:25.  That month, an employee of Appellant called to offer Appellee a load for pick-up.  Spears Dep.,1/31/14, 8:23-9:10.  The parties orally agreed on the price of the shipment.  *Id.* at 7:10.  Appellee then received a "carrier set-up packet" containing various forms, as well as

the Motor Carrier Service Contract ("MCSC"). *Id.* at 10:20- 11:9. Appellee signed and returned the documents to Appellant. *Id.* at 12:1-4.

Other carriers used Appellant's web-based system, which enables carriers to bid on loads posted by Appellant on behalf of its customers. Homan Dep., 12/6/13, 23:5-16. If a carrier is awarded a shipment, the carrier receives an email confirmation that contains a hyperlink to the Appellant's Carrier Terms of Use ("Terms of Use"). The Terms of Use do not include an arbitration clause. *See* Carrier Terms of Use.

Regarding this first job, Appellee did not bid via the online system; Appellant contacted Appellee directly. Spears Dep. at 8:23-9:10. Nevertheless, twelve days *after* Appellee completed delivery, Appellant emailed an award confirmation containing a hyperlink to the Terms of Use. *Id.* at 9:11-20.

In May of 2012, Appellant contacted Appellee for assistance with another client, Streamlite. *Id.* at 14:25, 15:1-25, 16:1-6. Appellant called Appellee and other carriers for their pricing and ultimately awarded Appellee the job. *Id.* Thereafter, Appellant received weekly email confirmations arranging shipments for the following week. Keppel Dep. at 68:1-25, 69:1-6. This practice continued until June 2012, when Streamlite abruptly went out of business and Appellant stopped paying Appellee for shipments. *Id.* at 19:22-20:14. Appellant pursued legal action against Streamlite and was able to recover a portion of Streamlite's unpaid balance. *See* Affidavit of

Ryan Boushell 5/13/14 at ¶ 10. Appellant offered Appellee $9,812.87, 19% of the $50,513.15 owed to Appellee. *Id*. at ¶ 12.

Appellee refused payment and, on July 23, 2013, filed a demand for arbitration against Appellant seeking payment of the full $50,513.15. Appellant brought a Petition to Stay Arbitration pursuant to 42 Pa.C.S.A. § 7304(b), which the lower court denied. *See* Petition to Stay Arbitration, 10/21/13. The parties proceeded to arbitration, and ultimately Appellee was awarded $50,952.09, plus $637.50 in costs. *See* Arbitration Award 2/20/15. Appellant filed a Petition to Vacate the Arbitration Award. On April 10, 2015, the Petition to Vacate was denied. Appellant filed an appeal, which was quashed as premature. On December 1, 2015, the lower court granted Appellee's Petition to Confirm the Arbitration Award and entered judgment in its favor. This appeal followed.

Appellant timely filed a court-ordered PA.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

Appellant raises the following issue for review:

> Did the Court of Common Pleas err in its denial of Appellant's Petition to Stay arbitration and in its subsequent confirmation of the arbitration award were [sic] there was no enforceable arbitration agreement between the parties?

Appellant's Brief at 5.

- 3 -

Appellant contends the trial court erred in compelling arbitration of Appellee's claim for damages.[1]  Appellate courts employ a two-part test to determine whether a trial court should have compelled arbitration: the court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute is within the scope of the agreement.  ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654 (Pa. Super. 2013).

Appellant challenges the first part of this test.  According to Appellant, an arbitration award should not be enforced where it contemplates execution by both parties, but not all parties sign.  Appellant's Brief at 16 (citing in support ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94 (Pa. Super. 2015)).  Here, Appellant argues, it never signed the MCSC.  Thus, according to Appellant, the MCSC was merely a draft agreement and not binding on the parties.  Moreover, Appellant suggests that the parties never operated under the terms of the MCSC.  Appellant's Brief at 16.  Rather,

_____

[1]  Appellee asserts that Appellant has waived consideration of the claim it presents on appeal, suggesting that (1) its claim first arose in the context of interlocutory orders issued by the trial court, thus precluding appellate consideration now, (2) Appellant asserts arguments contrary to those raised before the trial court, and (3) Appellant has either omitted or stated issues vaguely.  ***See*** Appellant's Brief at 11-14.  We disagree.  First, Appellant could not pursue his appeal until entry of a final order or judgment, at which time, all previous, interlocutory issues may be raised.  ***See McNeil v. Jordan***, 894 A.2d 1260, 1266-67 (Pa. 2006). (noting that an appeal from "the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment").  Second, Appellant has consistently maintained that the MCSC does not constitute a binding agreement to arbitrate.  ***See*** Petition to Stay, 10/8/13, ¶ 38.  Thus, we decline to dismiss Appellant's claim as waived.

according to Appellant, the Carrier Terms of Use governed their relationship. *Id.*

An agreement to arbitrate is a contract. ***United Steelworkers of America, AFL-CIO v. Westinghouse Elec. Corp (Bettis Atomic Power Lab.)***, 196 A.2d 857, 859 (Pa. 1964). Our standard of review is *de novo*, and our scope is plenary. ***Bair***, 108 A.3d at 96 (quoting **Bucks Orthopaedic Surgery Assoc., P.C. v. Ruth**, 925 A.2d 868, 871 (Pa. Super. 2007)). The touchstone of any valid contract is mutual assent and consideration. ***Bair***, 108 A.3d at 96; ***Weavertown Transp. Leasing Inc. v. Moran***, 834 A.2d 1169, 1172 (Pa. Super. 2003).

Appellant's reliance on ***Bair*** is misplaced. In ***Bair***, following the death of her mother, plaintiff, as executrix of her mother's estate, commenced a wrongful death action against the operator of her mother's healthcare facility. ***Bair,*** 108 A.3d at 95. The healthcare facility sought to enforce an arbitration agreement signed by the plaintiff acting under power of attorney. *Id.* Despite a signature line for both parties, the healthcare facility never signed the agreement. *Id.* at 97. The trial court declined to enforce the agreement, and the healthcare facility appealed. *Id.* at 96. This Court affirmed, concluding that the failure of the defendant to sign the arbitration agreement precluded the defendant from enforcing the agreement against the plaintiff. *Id.* at 97. However, as noted by Appellee, this Court's decision was not rooted solely in the healthcare facility's mere failure to sign the arbitration agreement.

> "[t]he issue is not whether the arbitration agreement was signed by the party sought to be bound, but whether there was a meeting of the minds, that is, whether the parties agreed in a clear and unmistakable manner to arbitrate their disputes."

Appellee's Brief at 17 (quoting **Bair**, 108 A.3d at 97; emphasis omitted).

Here, the lack of Appellant's signature does not render the MCSC invalid. The court in **Bair** noted, "[T]he absence of signatures is not fatal unless required by law or by the intent of the parties…" **Bair**, 108 A.3d at 98; **Shovel Transfer Storage, Inc., v. Pa. Liquor Control Bd.**, 739 A.2d 133, 136 (Pa. 1999) ("As a general rule, signatures are not required unless signing of contract is expressly required by law or the intent of the parties.").

The contract language set forth in the MCSC does not explicitly require Appellant's signature. In the MCSC, the line preceding the signature lines state, "In witness whereof, the parties, intending to be legally bound, have set their hands and seals the day and year first above written." **See** MCSC Agreement at 12. This statement is not an express requirement for both parties' signatures. The phrase "legally bound" constitutes consideration for the contract. **Socko v. Mid-Atlantic Sys. Of CPA, Inc.**, 126 A.3d 1266 (Pa. 2015) (holding that the term "legally bound" is interpreted by 33 P.S. § 6 to supply the necessary consideration for an agreement.)

Appellant also references **Franklin Interiors v. Wall of Fame Mgmt. Co. Inc.**, 511 A.2d 761 (Pa. 1986) and **Commonwealth v. On-Point Tech. Sys., Inc.**, 821 A.2d 641 (Pa. Commw. Ct. 2003) in support of its argument

that the MCSC is merely a draft, as Appellants did not sign the agreement. However, both cases are distinguishable, as the contracts at issue included explicit language requiring a signature. For example, in **Franklin Interiors**, the Supreme Court determined that an explicit requirement flowed from contractual language stating, "[t]his document does not become a final contract until approved by an officer of Franklin Interiors." **Franklin** 511 A.2d at 763. Similarly, in **On-Point Tech.**, the Commonwealth Court rejected a party's contention that a binding contract was formed, where the contracted language expressly required signatures. **On-Point Tech**, 821 A.2d at 643.

Moreover, there is clear evidence of Appellant's intent to be bound by the terms of the MCSC. At the beginning of their relationship, a representative from Appellant's company contacted Appellee and provided them with the MCSC to sign and return. Furthermore, Appellant informed Appellee that until Appellee signed and returned the MCSC, they would not receive payment. Spears Dep. at 12:13-17. In contrast, Appellee did not receive the Carrier Terms of Use agreement until two weeks after they completed their delivery.

Appellant suggests that the Carrier Terms of Use controlled the parties. We disagree. There is no evidence that the parties operated under the Terms of Use agreement. During the course of their business, Appellee never placed a bid via Appellant's online system. Appellee did not receive the Terms of Use in advance of their first job, and there is no evidence that

the Terms of Use were negotiated or accepted. Rather, the terms were forwarded to Appellee as a hyperlink in an email received by Appellee *after* the job was accepted and completed. Based on the language in the MCSC and the business practices between the two parties, the Terms of Use agreement does not constitute a contract.

The MCSC constitutes a valid agreement to arbitrate and is binding upon the parties. Thus, the trial court did not err in denying Appellant's Petition to Stay and confirming the subsequent arbitration award.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016