J-A23038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH BARAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GEORGE WESTON BAKERIES, INC., AND GEORGE WESTON BAKERIES DISTRIBUTION, INC. | |
| Appellees | No. 380 WDA 2018 |

Appeal from the Judgment Entered March 12, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No.: GD-08-21117

BEFORE:  BOWES, SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 7, 2019**

Appellant Joseph Baran appeals from the March 12, 2018 judgment entered in the Court of Common Pleas of Allegheny County ("trial court") against him and in favor of Appellees George Weston Bakeries, Inc., and George Weston Bakeries Distribution, Inc. (hereinafter, "Weston") following the denial of his post-trial motions seeking judgment notwithstanding the verdict ("JNOV").  Upon review, we affirm.

The facts and procedural history of this case are undisputed.[1]  In 1999, Appellant entered into an exclusive distribution agreement (the "Agreement")

---

[1] Unless otherwise specified, some background facts are taken from the June 9, 2010 memorandum issued by a prior panel of this Court.  *See Baran v. George Weston Bakeries, Inc.*, 4 A.3d 681 (Pa. Super. Filed June 9, 2010) (unpublished memorandum).

with Weston's predecessor company, whereby he agreed to use his best efforts to sell the company's fresh-baked products along his route, designated as "sales area #1269" (the "Route"). In return, he received a twenty percent commission on those sales.

In 2008, Weston sent Appellant a letter terminating the Agreement based on numerous perceived violations of the Agreement over the years. Although Appellant still owned the Route and received income from it, Weston assumed control and operation of the Route after termination. Weston operated the Route by hiring temporary drivers. Soon thereafter, Weston expressed its intention to sell the Route at a fair market price on Appellant's behalf.

Appellant subsequently filed the instant civil complaint against Weston, asserting breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with advantageous business relationships, and civil conspiracy. Appellant also sought relief in the form of punitive damages, as well as a preliminary injunction to enjoin Weston's sale of his distribution rights in the Route and to reinstate him as Weston's independent operator of the Route.

Following a hearing, on February 12, 2009, the trial court granted a preliminary injunction. The trial court concluded that although it was not persuaded to issue an injunction requiring Weston to reinstate Appellant as the Route's operator, it found reasonable grounds to issue an injunction prohibiting Weston from selling Appellant's exclusive distribution rights in the

Route until the matter could be fully adjudicated. On appeal, we affirmed the trial court's issuance of the preliminary injunction in Appellant's favor. ***See Baran***, ***supra***.

On June 14, 2013, Weston filed a motion for partial summary judgment, arguing that Appellant was not entitled to recover lost profits under the Agreement, which was governed by New York law. Following Appellant's response, the trial court granted Weston's motion for partial summary judgment on November 21, 2014.

The case eventually proceeded to a bench trial, after which the trial court made the following factual findings:

> In 1962, at the age of five, [Appellant] began working in the bread industry by delivering bread door to door with his father. By 1985, [Appellant] owned a delivery truck and was an independent contractor for Bestfoods Baking Distribution Company ("Bestfoods") delivering bread and other similar products to grocery stores in the West Mifflin area. In 1999, Bestfoods and [Appellant] entered into [the Agreement] for [Appellant] to distribute premium products, such as Thomas'® English muffins and Brownberry® breads. The Agreement made [Appellant] the exclusive distributor of those products in the West Mifflin and Homestead areas. In approximately 2004, [Weston] acquired Bestfoods, including the rights and duties under the [A]greement with [Appellant].
>
> Around this time, significant changes affecting [Appellant's] distribution area were taking place. The large "Waterfront" shopping district along the Monongahela river opened in the Homestead area, and nationwide retailers located in the distribution area, including Walmart, Target and Sam's Club, increased their sales of foods. To accommodate these changes, Weston believed that [Appellant] needed to change his delivery methods. Weston suggested that [Appellant] have a family member or an employee assist him, or that he "split his route" by selling a portion of the distribution area to another independent

operator. [Appellant], believing these suggestions would reduce his income, declined to implement them or any other change in his delivery methods.

In 2006, 2007, and 2008 Weston sent [Appellant] eight letters that specified conduct by him that breached the [A]greement and allowed him three days to cure the breaches. In July 2008, after a Walmart serviced by [Appellant] removed Weston's shelf space in the deli section of the store and reallocated it to a competitor, Weston notified [Appellant] the [A]greement was terminated. Weston instructed [Appellant] to sell his distribution rights to a qualified purchaser within ninety days, with Weston operating [Appellant's] business, for his account, pending the sale.

Trial Court Opinion, 5/14/18, at 1-2. Based on the foregoing findings, the trial court found in favor of Weston, dissolved the February 12, 2009 preliminary injunction, and denied Appellant's request for a permanent (mandatory) injunction. The trial court concluded that Appellant "repeatedly breached Section 4.1 of the [Agreement]" and "never cured many of the breaches, which under Section 8.3 'constitute a chronic breach and threaten significant harm to [Weston], its trademarks or commercial reputation.'" Trial Court Order, 12/11/17, at ¶ 2. Given Appellant's breaches, the trial court concluded that Weston "was entitled to terminate the [A]grement." *Id.* at ¶ 3.

Appellant timely filed post-trial motions, seeking JNOV or a new trial. Specifically, Appellant argued that "the evidence produced at trial by both [Appellant] and [Weston] clearly establishes there were no repeated breaches under Section 4.1 of the [Agreement] which constituted a chronic breach." Post-trial Motion, 12/17/17, at ¶ 1. Following a hearing, the trial court denied Appellant post-trial relief on February 20, 2018. On March 12, 2018, the trial

court's verdict was reduced to judgment. Appellant appealed to this Court. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, raising two assertions of error. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant presents two issues for our review:

[I.] Whether the lower court abused i[t]s discretion and committed an error of law in ruling that [Appellant] had breached the contract in question.[2]

[II.] In the second appealable issue [Appellant] suggests the lower court abused its discretion and committed an[] error of law when it ruled that lost profits were not recoverable in this instant action because they were not permitted by paragraph 11.12 of the contract at issue.

Appellant's Brief at 3.[3]

Our scope and standard of review of these claims is well-defined.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. We will respect a trial court's findings with regard to the credibility

---

[2] The first question presented is inartfully phrased. In his brief, Appellant does not contest that he breached the Agreement. Rather, he argues that he cured his breaches and, as a result, Weston should not have been permitted to terminate the Agreement.

[3] Because our resolution of Appellant's first issue is dispositive, we need not address his second issue pertaining to trial court's grant of partial summary judgment in favor of Weston on the issue on damages. The trial court found against Appellant on his claim for breach of contract.

and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

***J.J. DeLuca Company, Inc. v. Toll Naval Associates***, 56 A.3d 402, 410 (Pa. Super. 2012) (quotation marks, formatting, and citations omitted).

Our standard of review of a trial court's denial of a request for a permanent injunction is well-settled: "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." ***Buffalo Twp. v. Jones***, 813 A.2d 659, 663–64 (Pa. 2002).

> Ultimately, the grant or denial of a permanent injunction will turn on whether the trial court properly found that the party seeking the injunction established a clear right to relief as a matter of law. Accordingly, we think it proper that appellate review in these cases is whether the lower court committed an error of law in granting or denying the permanent injunction. Our standard of review for a question of law is *de novo*. Our scope of review is plenary.

***Id.*** at 664 n.4 (citations omitted).

It is settled that because contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope of review plenary. ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015), *appeal denied*, 125 A.3d 775 (Pa. 2015).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and

- 6 -

unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Ramalingam v. Keller Williams Realty Group, Inc.***, 121 A.3d 1034, 1046

(Pa. Super. 2015) (citation and original emphasis omitted).

Instantly, the Agreement in pertinent part provides as follows:

## ARTICLE 4

## DISTRIBUTOR'S OBLIGATIONS

**§4.1. RESULTS**: In order to maximize its purchase from [Weston], [Appellant] agrees to develop and maximize sales of Products to Outlets within the Sales Area by maintaining an adequate and fresh supply of Products in all Outlets; rotating Products to promote their sale before they become stale or off code; promptly removing all stale or off code Products; cooperating with [Weston] or its affiliates in its marketing programs, maintaining a computer assisted record-keeping system compatible with the system maintained by [Weston] now or in the future; and providing service on a basis consistent with good industry practice to all Outlets in the Sales Area requesting service.

. . . .

## ARTICLE 8

## TERMINATION

. . . .

**§8.3 CURABLE BREACH**: In the event of breach by [Appellant] other than under §8.2 [(non-curable breach)], [Weston] shall give [Appellant] three (3) business days written notice within which [Appellant] may cure the breach. If [Appellant] fails to cure such breach within said three (3) day period, [Weston] may thereafter terminate this Agreement and [Appellant] shall have no further right to cure; provided, further, that the parties agree that repeated violations constitute a chronic breach and threaten significant harm to [Weston], its trademarks or commercial reputation, and in such event [Weston] shall be entitled to terminate this Agreement pursuant to §8.2 and [Appellant] shall have no further right to cure.

The Agreement, 11/15/99, at 6, 13.

Based on the foregoing provisions, Appellant argues that the trial court erred in concluding that he failed to cure his breaches of the Agreement. In support, Appellant points out that Ricky Saxon, a Weston representative who terminated Appellant, testified that Appellant had cured the breaches. Appellant's Brief at 8-9.[4] We disagree.

Here, the trial court expressly found that Appellant's repeated violations of the Agreement constituted a chronic breach sufficient to permit Weston to terminate the Agreement under Section 8.3. As the trial court explained:

[Appellant] failed to cure at least four different breaches. After notice, [Appellant] admitted he did not deliver fresh baked products to Target three days a week and Sam's Club four days a week. There also was no dispute that, after notice, [Appellant]

_____

[4] To the extent Appellant attempts to undermine Mr. Saxon's trial testimony using Mr. Saxon's preliminary injunction testimony, such issue is waived because Appellant failed to do so in the trial court in the first instance. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Appellant also may not rely on the preliminary injunction transcript because it is not part of the certified record. **See Commonwealth v. Kennedy**, 868 A.2d 582, 593 (Pa. Super. 2005) (noting that "this Court may not consider anything that is not part of the certified record[.]").

was unable to get Walmart to replace either Weston's 4-sided sales display in the front of the store or its shelf in the deli section. Under the [Agreement], each of these uncured breaches was a sufficient reason for termination. These four breaches, plus additional breaches involving a Giant Eagle and a Shop N Save that may have been cured, also are repeat violations under the [Agreement] sufficient for termination. Therefore, there was sufficient evidence for [the trial court's] ruling in favor of Weston, and the ruling was not against the weight of the evidence.

Trial Court Opinion, 5/14/18, at 4 (record citations omitted). As stated, Appellant himself admitted at trial that he did not cure the breaches. **See** N.T. Trial, 11/1-2/17, at 85 (admitting that after receiving notice to cure, he failed to service Sam's Club four days per week and Target three days per week); **Id.** at 143-144 (admitting that he lost the 4-sided display because of his failure to keep it adequately stocked); **Id.** at 157-160 (admitting that he lost the shelf space in the Walmart deli because of his failure to keep it adequately stocked).

Insofar as Mr. Saxon's trial testimony, Appellant essentially is inviting us to substitute our judgment for that of the trial court by accepting Appellant's proffered version of the facts. We decline the invitation. As noted earlier, in a nonjury trial, the trial court sitting as the finder of fact is free to believe all, part, or none of the evidence, and this Court will not disturb the trial court's credibility determinations. **Voracek v. Crown Castle USA Inc.**, 907 A.2d 1105, 1108 (Pa. Super. 2006), *appeal denied*, 919 A.2d 958 (Pa. 2007). "The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." **Shaffer v. O'Toole**,

964 A.2d 420, 422–423 (Pa. Super. 2009), *appeal denied*, 981 A.2d 220 (Pa. 2009).

Here, the trial court rejected Appellant's interpretation of Mr. Saxon's trial testimony and declined to find that Appellant had cured the breaches.

> [The trial court] interpret[s] the testimony to mean Mr. Saxon thought the breaches were cured but learned later they were not cured. . . . . [The trial court] found Mr. Saxon credible when he indicated he first thought the breaches were cured but later found out he was mistaken as they were "not cured." Because Mr. Saxon credibly testified at the trial the breaches of the [Agreement] were not cured, [the trial court] correctly determined [Appellant] breached the [A]greement.

Trial Court Opinion, 5/14/18, at 6-7.

In sum, viewing the evidence in a light most favorable to Weston as the verdict winner and given Appellant's own admission and Mr. Saxon's testimony that Appellant failed to cure at least four breaches after receiving notice of the same, we cannot conclude that the trial court erred in entering judgment in Weston's favor. Because Appellant repeatedly breached the Agreement and failed to cure his breaches, Weston was entitled to terminate the Agreement. The trial court, therefore, did not err in denying Appellant's claim for a permanent injunction. Appellant failed to establish a clear right to relief as a matter of law.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/7/2019