J-A24019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN LUFBURROW | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HIGHMARK HEALTH | : | |
| | : | |
| Appellant | : | No. 1429 MDA 2024 |

Appeal from the Order Entered September 4, 2024
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2023-06410

BEFORE: DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.: **FILED: JANUARY 22, 2026**

Appellant, Highmark Health, appeals from the September 4, 2024 order overruling its preliminary objections and refusing to send this matter to arbitration.[1] Appellant challenges the court's determination that no arbitration agreement existed between Appellant and its former employee, Appellee, John Lufburrow. After careful review, we affirm.

Appellant employed Appellee from May 2017 until January 2023. At the start of Appellee's employment, he signed various documents, including an offer of employment and a restrictive covenant agreement, copies of which

---

[1] This interlocutory appeal is authorized by Pa.R.A.P. 311(a)(8) (permitting an interlocutory appeal from any order that is made appealable by statute), and the Uniform Arbitration Act, 42 Pa.C.S. § 7320(a)(1), which provides that an appeal may be taken from "[a] court order denying an application to compel arbitration[.]"

Appellant stored in its "Workday" electronic human resources system. Appellant promoted Appellee several times during his employment.

On January 13, 2023, Appellee's employment with Appellant terminated. According to Appellee, pursuant to a sales incentive plan agreement between the parties, Appellee was entitled to payment of certain wages that he had earned and accrued in the year prior to the end of his employment but that Appellant had not yet paid him. On April 6, 2023, his counsel sent a letter to Appellant's chief operating officer, Karen Hanlon; Appellant's executive vice president and chief human resources officer, Larry Kleinman; and Appellant's chief legal officer, Carolyn Duronio, requesting that Appellant pay the outstanding wages in full or Appellee would initiate legal action.

Appellant's counsel, Lindsey Kennedy, responded by letter 11 days later rejecting Appellee's claim for wages under the sales incentive plan agreement and reminding Appellee of his obligations under the restrictive covenant agreement. Ms. Kennedy did not, however, raise the existence of an arbitration agreement. Exchanges of correspondence between Appellee's counsel and Ms. Kennedy ensued, culminating in Appellee's counsel sending Ms. Kennedy a draft complaint and outlining Appellee's intent to file the complaint if Appellant did not resolve this matter by August 14, 2023.

The parties did not resolve their wage dispute prior to the deadline established by Appellee. Consequently, on August 16, 2023, Appellee initiated this action by filing a complaint raising breach of contract, unjust enrichment,

and promissory estoppel claims and asserting that Appellant violated the Wage Payment and Collection Law.

On August 29, 2023, Appellant sought, via email to Appellee's counsel, an extension of time in which to file an answer to the complaint. Appellee's counsel agreed to extend the time for filing an answer to September 19, 2023. On September 12, 2023, however, Appellant's counsel notified Appellee's counsel for the first time of the purported existence of a mandatory arbitration agreement ("MAA") that would require Appellee to submit any claims arising from his employment with Appellant to arbitration.

Then, on September 19, 2023, rather than file an answer to the complaint, Appellant filed preliminary objections seeking to transfer this matter to arbitration asserting that Appellee had agreed, at least twice during the term of his employment, to submit any controversies arising from his employment to arbitration when he entered into Appellant's MAA. In support of the existence of the MAA, Appellant attached, *inter alia*, affidavits of its employees Brenda S. Goodling—an Employee Relations Consultant in Appellant's Human Resources Department—and Megan Shusko—Appellant's "learning architect."[2] Ms. Gooding and Ms. Shusko explained in their affidavits that Appellant presented an online course to its employees to train the employees on the content and effects of the MAA (the "ADR training").

---

[2] As a member of Appellant's Instructional Design Team, Ms. Shusko worked to design and develop instructional materials and training programs for Appellant's employees and managers. Shusko Affidavit, 9/9/23, at ¶ 4.

Appellant stated that when an employee completed the ADR training program, it required the employee to respond to a quiz question and, click "accept" to indicate that the employee agreed to the terms of the MAA. Preliminary Objections, 9/19/23, at ¶ 17-18. The program would record the employee's participation in the program as "100% completed." Preliminary Objections, 9/19/23, at ¶¶ 17-18. Appellant represented that, on May 9, 2017, and again on April 18, 2018, Appellee participated in the online ADR training, responded to the quiz question, and clicked "accept." Notably, Appellant did not attach a copy of the MAA signed by Appellee.

On October 9, 2023, Appellee filed preliminary objections to Appellant's preliminary objections, requesting that the trial court strike Appellant's preliminary objections on procedural grounds.[3] In the alternative, Appellee denied Appellant's claim that an agreement to arbitrate existed.

On September 3, 2024, the trial court held a hearing to take evidence regarding the existence of an arbitration agreement at which Appellee, Ms. Shusko, and Mary Esgrow—Appellant's director of employee and labor relations—testified. Because Appellant could not produce an arbitration agreement signed by Appellee to prove the existence of a valid arbitration agreement, the evidence presented at the hearing focused on Appellant attempting to prove the existence of the agreement by explaining the

---

[3] In particular, Appellee asserted that the preliminary objections were improper and untimely because Appellee had granted Appellant an extension of time only to file an answer to the complaint, not an extension of time to file preliminary objections.

processes by which it documents employee participation in its ADR training program and online acknowledgement of agreement to the MAA.

To this end, Ms. Shusko testified that Appellant had a computer-based training program to educate its employees about its ADR program. She testified that in 2017 and 2018, all employees, whether they were new hires or had moved into new roles, were supposed to take the computer-based training that culminated in the electronic acceptance of the MAA. She testified that if an employee did not electronically accept the MAA, the course would continue to show that the training was "in progress" or "incomplete." In other words, completion of the ADR training program required the online acknowledgement of acceptance of the MAA.

Ms. Shusko testified that at the time Appellee began working for Appellant, Appellant used software called "SkillPort" to implement the ADR training. She testified that SkillPort also stored an employee's ADR program completion status. She testified that, in approximately 2020, Appellant stopped using SkillPort to administer its online ADR training program and that when Appellant's contract with SkillPort ended, Appellant "had a copy of training records downloaded from the [Skillport] system into an Excel file." N.T. Hr'g, 9/4/24, at 22. She explained that "[t]he records were downloaded either by someone in our team or by SkillPort and provided to us." *Id.* at 23. She testified that the records are kept by Appellant in the regular course of business and saved on one of Appellant's network servers.

- 5 -

With respect to verifying whether Appellee had completed Appellant's online ADR training program and acknowledged acceptance of the MAA, Ms. Shusko testified that she "went to the location on our network drive where those files are stored and opened the Excel files." *Id.* at 25. She testified that Appellant maintains, and her current team is the custodian of, those files. She testified that she reviewed the Excel spreadsheets of the course completions that were downloaded from SkillPort and they showed that Appellee had completed the ADR training and acknowledged acceptance of the MAA in 2017 and 2018.

On cross-examination, Ms. Shusko testified that Appellant stores the single master Excel spreadsheet with historical records of ADR program completion from SkillPort on a shared drive. She explained that in order to prepare Appellant's exhibits for this litigation showing Appellee's completion of the online ADR training program and his acknowledgement of acceptance of the MAA she copied and pasted the relevant spreadsheet cells from the master spreadsheet onto a new document. She testified that there were no security controls in place to stop her from editing the document. She also testified that she did not know who created the master Excel spreadsheet or whether the information contained on it was ever verified against the SkillPort data itself, and there was no security protocol in place to stop anyone from changing the data within the spreadsheet.

Appellant then moved for admission of the Excel spreadsheet exhibits. Appellee's counsel noted on the record his objection to the court treating the exhibits as business records.

Ms. Esgro testified that in 2017 and 2018, she worked for Appellant as an employee relations consultant and, as a result, was familiar with Appellant's MAA. She testified that she does not have direct access to an employee's historical training record, but if she needed to access it, she would obtain it from one of the many people who had direct access to it and would rely on the veracity of the documents provided to her for the truth of the information in the business record. She confirmed that she had no role in migrating the data stored by SkillPort to any other system.

Ms. Esgro also testified that Appellant's human resources department used an online human resources system called Workday. With respect to Appellee's Workday human resources personnel profile, Ms. Esgro testified that it contained, numerous documents that Appellee had signed, either physically or electronically, including an at-will employment acknowledgement, a restrictive covenant agreement, a retention bonus agreement, and an offer letter. Ms. Esgro agreed that Appellee's Workday personnel profile did not include a signed arbitration agreement. She clarified that, she would not have expected to see such a document in Appellee's personnel profile because it is her "understanding that the MAA and the related training were completed in a separate system outside of Workday during this period of time." *Id.* at 48. She explained that she was aware of a "technical

limitation when it came to transferring any records of the MAA training and acknowledgements into the Workday system." *Id.*

Ms. Esgro further testified that if an employee did not acknowledge acceptance of the MAA through SkillPort the employee's manager would provide the employee with a "different executed copy of the MAA [] by their leader" that Appellant would consider binding. *Id.* Whether the executed copy provided to the employee by the leader would be recorded "would have been an interaction between that leader and [the employee]." *Id.* at 49.

Appellee's counsel sought to elicit testimony to explain why, if Appellant's "sweeping MAA [] applies to all employees[,]" Appellant did not raise the existence of the MAA until two weeks after Appellee filed his complaint even though Appellee had notified Appellant months earlier about a potential lawsuit. *Id.* In Ms. Esgro's opinion "knowing that we do have to check alternative systems for records and where they may be stored, it's not surprising [] that we had to go looking in more than one place." *Id.* at 49-50. She testified that locating those records would probably take "a couple of weeks in general" and that two months "possibly" seemed excessive. *Id.* at 50.

Appellee also testified at the hearing. He testified that he recalled signing an offer letter prior to commencing his employment with Appellant, that he did not recall participating in the ADR training program, and that he did not sign an MAA. He testified that if he had been told he must sign the MAA, he would not have signed it, even if he would have lost his job as a

consequence. Appellee testified unequivocally that if he was subject to an MAA, he would not have worked for Appellant. When asked by Appellant's counsel whether he had any evidence that he did not agree to the MAA, Appellee testified that he had none "[o]ther than [Appellant's] lack of documentation that [he] agreed to a [MAA]." *Id.* at 57. Appellee testified that he was "promoted three times in [his] almost six years with [Appellant], and [he has] no recollection of having to take [the ADR] training at each of those steps." *Id.* at 58-59.

Following the presentation of evidence and brief argument by counsel, the trial court noted, *inter alia*, that the court had "some real problems with [Appellant] not being aware of an MAA for several months. If that was the company[-]wide policy, you would think legal would know that." *Id.* at 62. Ultimately, the court found Appellant's witnesses and documentary evidence not credible or reliable and concluded that Appellant had not met its burden of proving that Appellee accepted participation in an MAA. The court, thus, overruled Appellant's preliminary objections and ordered Appellant to file an answer.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following five issues on appeal:

1. Did the trial court err and/or abuse its discretion in overruling [Appellant's] preliminary objections seeking to enforce [the MAA] by finding facts which are not supported by substantial evidence of record?

2. Did the trial court err and/or abuse its discretion by failing to recognize the valid business record evidencing [Appellee's] completion of the ADR training and acceptance of the MAA?

3. Did the trial court err and/or abuse its discretion by failing to acknowledge [Appellee's] clear and consistent testimony that he simply does not recall completing the ADR training or signing the MAA?

4. Did the trial court err and/or abuse its discretion by concluding that [Appellant's] witnesses lacked credibility because [Appellant] did not immediately notify [Appellee] of the existence of the MAA when it received a demand letter threatening litigation and, instead, waited until after a formal complaint was filed in federal court before raising the issue of arbitration in POs?

5. Did the trial court err and/or abuse its discretion by concluding that [Appellant] did not enter into a voluntary and binding arbitration agreement or waived its right to enforce a valid arbitration agreement because it notified [Appellee] of the existence of the MAA shortly after it requested an extension of time to file a response to the complaint, but weeks before any responsive pleading was filed?

Appellant's Brief at 3-4 (unnecessary capitalization omitted).[4]

Appellant's issues challenge the trial court's order overruling its preliminary objections after finding that a valid agreement to arbitrate did not exist and, therefore, refusing to compel this case to arbitration. In such cases, our standard of review is as follows:

> Our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. We

---

[4] Appellant has not included in its brief a section of argument corresponding to questions one and five as required by Pa.R.A.P. 2119(a). We, thus, conclude that Appellant has abandoned those issues and we decline to review them.

employ a two-part test to determine whether the trial court should have compelled arbitration: (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute is within the scope of the agreement.

*Davis v. Ctr. Mgmt. Grp., LLC*, 192 A.3d 173, 180 (Pa. Super. 2018) (internal citations and quotation marks omitted), *see also id.* at 182 (explaining "the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the [trial] court.").

A court cannot compel arbitration absent an express agreement to arbitrate. *Bair v. Manor Care of Elizabethtown , PA, LLC.*, 108 A.3d 94, 96 (Pa. Super. 2015). Appellant bears the burden of establishing the existence of such an agreement. *Id.* (citing 42 Pa.C.S. § 7304(a)).

To the extent that factual findings and credibility determinations are at issue, we will accept the trial court's conclusions insofar as they are supported by the record. *O.H. Bel Air Paratners LP v. Hinton*, 296 A.3d 1173, 1175 (Pa. Super. 2023); *see also C.G. v. J.H.*, 172 A.3d 43, 47, 57 (Pa. Super. 2017) (noting our deference to a trial court's factual findings where those findings are required to resolve preliminary objections). It is not the job of the appellate court to "pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder." *O.H. Bel Air Paratners*, 296 A.3d at 1175 (citation omitted).

In its first issue, Appellant contends that the trial court erred when it failed to find credible Appellant's witnesses' testimony and Excel spreadsheet purportedly evidencing Appellee's completion of the ADR training and acceptance of the MAA. Appellant's Brief at 41-54. Appellant assails the court

for declining to infer from its evidence that it has a "comprehensive ADR program" and that Appellee participated in the program and accepted the MAA on at least two separate occasions "without proper analysis under Pennsylvania Rule of Evidence 803(6), which allows for a party to rely on unauthenticated business records." *Id.* at 41-42. Appellant asserts that Ms. Shusko's testimony was sufficient to show a valid business record because she has personal knowledge that the information showing that Appellee participated in the ADR program was downloaded from Skillport and that the format of the download used in the ordinary course of business by Appellant was to an Excel spreadsheet. *Id.* at 47.

In explaining the reasons it found that Appellant's documentary evidence and witness testimony to prove the existence of the MAA was not reliable, the court noted, among other things, the lack of security protocols in place to prevent the manipulation of the data contained on the Excel spreadsheet and Appellant's delay in notifying Appellee of the existence of the alleged MAA. Trial Ct. Op., 12/31/24, at 4. Although, as Appellant observes, the court was also concerned by Ms. Shusko's inability to "verify that the data was accurately inputted from [SkillPoint]" as she did not create the records and to "identify who or what entity created them[,]" the trial court did not wholesale reject Ms. Shusko's testimony of the Excel spreadsheets as business records, rather the court afforded that evidence less weight than Appellant insists it was due. Our review of the record supports the trial court's factual

findings, and we cannot and will not reweigh the court's credibility determinations. Accordingly, Appellant is not entitled to relief on this claim.

In its second issue, Appellant claims that the trial court erred in crediting Appellee's testimony that he does not remember participating in the ADR training program or signing an MAA as sufficient to overcome the "presumption" of a valid MAA. Appellant's Brief at 55-59. In support of this claim, Appellant has cited and discussed numerous cases whose authority is not binding on this Court but cites no cases whose authority is binding.

Our Rules of Appellate Procedure require an appellant to support each question raised with discussion and analysis of pertinent authority. *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003); Pa.R.A.P. 2119(a). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted).

Our review indicates that Appellant has not properly raised and developed its argument in support of his claim. We, thus, decline to consider the merits of this issue.[5]

---

[5] Even if Appellant had properly developed its argument in support of this claim, it would not entitle Appellant to relief as this claim, is in essence, a challenge to the weight of the evidence in which Appellant asks us to reconsider the court's determination as to the credibility of Appellee and reweigh the substantial evidence of record. We cannot and will not make credibility determinations or undertake to reweigh the evidence. *See O.H. Bel Air Partners*, 296 A.3d at 1175.

In its final issue, Appellant claims the trial court erred in finding that no MAA existed because Appellant did not invoke its existence when Appellee initially threatened litigation. Appellant's Brief at 60-65. Appellant contends that it was under no obligation to raise the issue of the MAA earlier and its failure to do so does not constitute a waiver of its right to enforce it. *Id.* at 62-64.

The trial court's opinion reflects that the court considered Appellant's belated invocation of the purported existence of the MAA as one of many factors it considered when weighing the evidence and determining whether it found Appellant's position persuasive. The court did not, as Appellant suggests, find that as a matter of law Appellant had waived its right to enforce the MAA simply because it waited months before asserting that Appellee was bound by an MAA. Rather, after considering all the evidence presented, the court opined as follows:

> [Appellant] presented testimony from training software/program creators who claimed that [Appellee] would have had to have signed the agreement to complete the training as recorded in their records. However, the witnesses could not verify that the data was accurately inputted from the previous training system as they did not create the records. Nor could they identify who or what entity created them. Furthermore, the records themselves were open to manipulation. Therefore, this testimony was less than persuasive. It was further discounted by the fact that [Appellant] did have electronic records of other agreements that [Appellee] had signed. Those documents had been successfully transferred to the new human resources systems. However, [Appellant] had no record of a signed agreement to arbitrate.

> Finally, it is noteworthy that [Appellant] did not immediately raise the existence of an arbitration agreement. It argued that every employee is required to sign such an agreement. However, the

- 14 -

delay in raising its existence created doubts as to whether every employee actually signs such an agreement. If it were ubiquitous among all employees, [Appellee] would have known to raise it immediately.

[Appellee] also testified that he never agreed to be bound by an agreement to arbitrate. He did not recall any training on the subject. He also testified that had he been presented with such an agreement, he would have found other employment rather than accept it. We found his testimony to be credible.

Trial Ct. Op. at 4-5.

Following our review, we conclude that the substantial evidence of record supports the trial court's findings of fact. Appellant once again asks this Court to reweigh the evidence and substitute our judgment over matters of credibility and weight of the evidence for that of the trial court. We decline to do so. Appellant is, therefore, not entitled to relief on this claim.

In sum, having found Appellant's issues meritless, waived, or abandoned, we affirm the trial court's order overruling Appellant's preliminary objections.[6]

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/22/2026

_____

[6] To the extent that Appellee suggests in his brief that this Court should award him counsel fees, we decline to do so.

- 15 -